# Watson *versus* The Pittsburgh and Connellsville Railroad Company.

*Railroad Damages—Measure of Damages to Landowners.—Opinion of Witnesses.*

1. Under a charter which makes no provision for consequential damages, a railroad company is responsible for all injuries which are the direct and immediate consequence of the construction of the railroad, to the whole tract of land through which it may pass.

2. The exclusive appropriation of a part, the inconvenience arising from a division of the property, or from increased difficulty of access, and the cost of additional necessary fencing, are alike the direct and immediate result of such construction.

3. The measure of damages is the difference between what the whole property would have sold for unaffected by the railroad, and what it would have sold for as affected by it.

4. When the damages are assessed before the completion of the road, the opinion of the witness as to what will be the value of the land after the road is completed is inadmissible.

5. When the damages are assessed after the completion of the road, the difference in the value of the land before the location and after the completion of the road, may be shown by the opinion of witnesses, confining them to the consideration of the direct and necessary consequences of the construction of the road.

ERROR to the Common Pleas of *Allegheny county*.

William Watson was, and still is, the owner in fee of two pieces of land in Peebles township, one of them containing about thirty acres of land on the northern or upper side of the Braddock's Field Plank-Road, about two miles from the city of Pittsburgh, and having a front on the plank-road of 2050 feet; the other containing about twenty-three acres on the lower or southern side of the same road, over part of which defendant's road is located. This proceeding was commenced by the president of the road filing a petition, stating that the road was located over the plaintiff's land, and praying for the appointment of viewers to assess the damages which he might sustain. The report of the viewers was filed September 9th 1859, awarding $805 to the plaintiff in error, and along with the report a plot showing the location of the road over the plaintiff's land on the northern side of the plank-road, taking a strip of land 66 feet wide and 2050 feet long, and leaving at the end nearest Pittsburgh a narrow strip 25 feet wide at one end, and decreasing to nothing at a point 1000 feet from the lower end of his place, between the railroad and the plank-road.

On October 6th 1859, the plaintiff in error appealed from the award. On January 6th 1860, the Court of Common Pleas directed an issue to be formed under general order made the same day, directing, among other things, that on appeals from the

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

award of viewers, assessing damages in cases of lands taken by railroad companies, the owner of the land should be made plaintiff. On February 27th 1860, a jury was sworn, who on March 1st 1860, rendered a verdict in favour of Watson, finding the value of the land taken $1833; the advantages to be derived by him from the road $2083, and the disadvantages $6250; and the whole amount of damage $6000. On March 10th 1860, the court, on motion of the railroad company, set aside the verdict and directed a new trial, on the ground that the plaintiff, Watson, was only entitled to recover the value of the land actually taken and covered by the railroad, and not for injuries to his remaining land; and that the damages were excessive and had been found by mistake. May 28th 1860, a jury was sworn on the second trial, and on June 1st 1860, rendered their verdict in favour of Watson for $2410. June 18th 1860, judgment was entered on the verdict, and on August 28th 1860, this writ of error was taken.

The issue was made up by a formal statement on the part of the plaintiff, and a counter statement by defendant, drawn up in the following form and filed of record in the cause:—

"The said William Watson complains that the said Pittsburgh and Connellsville Railroad Company have located their road upon, and have entered into and are occupying for the purpose of making said road, a certain piece of land, of which the plaintiff, to wit, the said William Watson, is seised in fee, and which said piece of land is the same as that of which a plot and description is filed along with the report of the viewers in this case, and which plot and description are hereby made a part of this statement, and which said piece of land contains two acres, three roods, and eight perches, and that said piece of land with the improvements and appurtenances so taken, as aforesaid, of great value, to wit, of the value of thirteen thousand dollars. And by reason of such taking and appropriation thereof, and the manner of the separation thereof from the said plaintiff's other lands, and by reason that the disadvantages resulting to him from the said railroad so to be made and used, greatly exceed the advantages by him to be derived therefrom, he has and will sustain great injury, and will suffer damage to the amount of twenty thousand dollars, and which amount of damages ought of right to be paid to him, but payment thereof is refused by the said Pittsburgh and Connellsville Railroad Company, therefore he brings suit.

"The defendants, by their attorney, J. H. Sewell, come into court and deny that the said piece of land so taken by them (and the improvements and appurtenances) for their railroad is worth the sum as set forth in plaintiff's statement, to wit, thirteen thousand dollars, and allege that the same is not worth over the sum of four hundred dollars. And further deny that such taking

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

and appropriation thereof, and the manner of separation thereof from said plaintiff's other lands, and by reason of the disadvantages to said plaintiff, resulting from said railroad, so to be made and used, greatly exceed the advantages by said defendant to be derived therefrom, to the amount of twenty thousand dollars. Defendants hereby allege that the advantages will exceed the disadvantages and injury so claimed by plaintiff, in the sum of twenty-five thousand dollars, and of this the said defendants put themselves upon the country."

On the trial in the court below, the plaintiff, having given in evidence a plot of his land through which defendants' road is located, and proved the contents of the whole tract and the quantity taken by the defendant; offered to prove that "the twenty-six acres and eighty-five and ninety-six hundredth perches of his land, remaining north of that which had been appropriated by defendant was worth, prior to and at the time of the appropriation, the sum of $600 to $800 per acre, and that by the entry on and occupancy by defendants for their railroad and by reason of said road, the said twenty-six acres and eighty-five and ninety-six hundredth perches will not be worth, when said road is constructed, more than $200 per acre."

This offer was objected to by defendant, for the reason that it was leading, and also because a portion of it went to prove consequential damages. The court (MELLON, J.) rejected the offer, which was the first error assigned.

The plaintiff then offered to prove that, at the time of, and prior to the appropriation by the defendants of that part of plaintiff's land over which their railroad is located, the fair, marketable value of the twenty-nine acres thirty-nine perches of plaintiff's land through which their railroad is located, was $24,000, and that by the entry on and occupation of part of the said twenty-nine acres and thirty-nine perches by the defendants, and by reason of the said railroad, the said twenty-nine acres and thirty-nine perches are injured and damaged to such an extent that when the said railroad is constructed, the fair, marketable value of the land remaining after the said entry and occupation, will not exceed $8000.

To which the defendants made the following objections, viz.:

1st. That the offer does not specify the character of the damage done, by which the land is depreciated in value, being purely speculative and consequential in its nature.

2d. That the plaintiff is debarred from proving damages to the remainder of their tract, by having given in evidence a plot of lots, embracing the land occupied by the railroad, and excluding the remainder of the tract.

The court sustained the objection and rejected the evidence; which was the second error assigned.

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

The plaintiff then made the following offer of evidence, to be proved by the same witnesses as the last, viz. : that at the time of and prior to the appropriation by the defendants of that part of plaintiff's land over which defendants' railroad is located, the fair, marketable value of the whole of plaintiff's land was $60,000, and that by the entry on, and occupation by the defendants of that part of the said land which they have appropriated for the purpose of constructing their railroad, and by reason of the said railroad the whole land of the plaintiff is injured and damaged to such an extent, that, when the said railroad is constructed, its fair, marketable value will not exceed the sum of $44,000.

To which offer the defendants made the following objections :—

1. That the offer does not specify the character of the damage done, by which the land is depreciated in value, being purely speculative and consequential in its nature.

2. That plaintiffs are debarred from proving damages to the remainder of their tract, by having given in evidence a plot of lots embracing the land occupied by the railroad, and excluding the remainder of the tract.

The court sustained the objection and rejected the evidence; which was the third error assigned.

The plaintiff submitted the following points to the court which were answered as follows, to which instruction and charge both parties excepted :—

1. That under the charter of defendants, by virtue of which they have entered upon and taken plaintiff's land, plaintiff is entitled to recover from defendants compensation for the injury and damage sustained by him by reason of the said entry and occupation ; and that the amount of said injury and damage is a question for the jury to say what, in their apprehension, will be sustained by plaintiff, by reason of said road, entry, occupation, &c. ; and that the jury are not confined to the mere value of the land taken and occupied by the defendants, but are to take into consideration all actual and immediate injury and damage to plaintiff.

Answer : " This point is affirmed with this qualification : The jury are to allow for no imaginary speculation or conjectural damages or injury ; nor for damages supposed to be consequent to other separate or distinct parts of plaintiff's property not taken or touched. Consequential or remote damages cannot be considered or allowed. You are required to have a substantial basis in facts for the damages you compute, and not to predicate your verdict upon the loose speculative or conjectural opinions of witnesses."

2. That under the charter of defendants, by virtue of which they have entered upon and taken plaintiff's land, plaintiff is

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

entitled to recover from defendants compensation for the injury and damages sustained by him by reason of the said entry and occupation, and that the amount of said injury and damage, is a question for the jury to say what, in their apprehension, will be sustained by plaintiff by reason of the said road, entry, occupation, &c.; and that the jury are not confined to the mere value of the land taken and occupied by the defendants, but are to take into consideration all actual and immediate injury and damage done to plaintiff; whether in taking land, injury to the house by cutting off the yard and conveniences, leaving a narrow strip between railroad and plank-road, injury to quarry by making it more inaccessible from plank-road, and by depreciating the balance of the land by cutting off the front and occupying all the level land which made the balance valuable.

Answer: "This point is too complicated and argumentative to be answered by affirmation or negation, and an answer is declined on that account. If it is intended thereby to elicit instruction to effect that the jury may take into consideration the shape or position in which the railroad cuts plaintiff's lands, or parts of his lands or houses, to that extent the proposition is affirmed. Positive injury thus immediately connected with the taking and appropriation, cannot be otherwise than regarded in connection with the quantity and value of land taken."

3. That under the act incorporating the defendants, the plaintiff is entitled to recover from the defendants, in addition to the value of plaintiff's land entered on and occupied by the defendants for the purpose of making their road, the amount his remaining lands of the same tract will be depreciated in value by the said entry and occupation by the defendants for the purpose of making their road, and by reason of the said road.

Answer: "This point is affirmed, so far as regards the cut and particular parts, portions, or lots cut through, but cannot be extended to take into the calculation suppositional inconveniences or disadvantages to remote parts or portions of plaintiff's lands; as, for instance, suppositional inconveniences of access to the upper parts of his farm, or to his quarry, and the like. The railroad company is bound, independently of the damages you may allow the plaintiff, to make him a good and sufficient bridge, causeway, or crossing from the upper part of his farm to the plank-road; or, in other words, from the one part of his farm to the other. It is not to make the depreciation, or supposed depreciation, of the residue of plaintiff's lands a distinct subject of damage and item of your finding, but merely that the shape, manner, and position of the cut, and taking so far as necessarily affecting the parts immediately adjacent and intimately connected therewith, will be regarded in connection with the value of the land actually taken and occupied. This must

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

necessarily be taken into consideration by the jury. The injury and damage therefrom is immediate and connected with the lands taken. This and the lands taken, form but one subject of contemplation to the mind. And in regarding any injury from the shape or manner of the cut, &c., to the adjacent grounds, the jury are also to consider the advantages to the plaintiff, if any, from the manner in which the proposed improvement will affect the value of his adjacent grounds."

4. That the proper measure of damage in this case is, the difference between the value of the plaintiff's land through which defendants' railroad is located, at the time of the appropriation of part of it by the defendants for the purpose of making their road, and the value of the said land, when the said railroad of defendants is constructed.

Answer: "This point is affirmed."

5. That in estimating the damages to plaintiff's land, and the advantages to be derived from the defendants' road, they are only to take into consideration the injury and damage, and advantages to the same tract through which the railroad of defendants is located.

Answer: "This point is affirmed."

6. That that part of the plaintiff's land lying on the southern side of the plank-road is a separate and distinct tract from that through which defendants' railroad is located, lying on the northern side of said plank-road.

Answer: "This instruction is refused. Whether the part lying on the south side is a separate and distinct tract from that on the north side of the plank-road, is a question of fact for the jury, under the evidence. If both sides were held, used, and occupied jointly or as one tract by plaintiff, the circumstance of the plank-road running through it would not make it two separate tracts."

7. That the advantages to the plaintiff from defendants' railroad are not to be deducted from the value of the land actually taken and appropriated by the defendants for their railroad, but only from the damage done to the remaining land of the plaintiff.

Answer: "This point is refused. The jury are not required to make separate or distinct estimates of the damage and injury done, and the advantages resulting to the plaintiff. All you are required to do is, in estimating the injury or damage, to consider also the advantages to the plaintiff of the proposed improvement causing this damage or injury."

8. That the plaintiff is entitled to receive from the defendants the actual value of the land appropriated by the defendants in money, and not in advantages to his remaining land.

Answer: "This point is affirmed. Nevertheless, in estimating

the actual value of the land taken, the jury are not to disregard the advantages to the owner by reason of the effect of the proposed improvement upon the value of the residue of the same tract or parcel of land. The law positively requires this. Every man of common prudence in parting with a portion of his property has regard to the end and purpose to which the portion he parts with is to be used and applied, and in considering the price at which he will let it go, he has regard to the effect its use for such purpose will have on the residue, and he estimates its value in his own mind relatively to the advantages it is expected to reflect upon what remains."

9. That the advantages to be considered by the jury must be such as particularly affect the particular tract or parcel of land whereof a portion is taken, not advantages of a general character which may be derived to the owner of the land taken, in common with the country at large, from the railroad.

Answer: " This point is affirmed. The advantages to be considered are only those resulting to the same tract, part of which is taken, and result from this railroad, located as it is, and not the general advantages that would result to the plaintiff, in common with other citizens, from this railroad, if located at a distance from him. It is the direct and immediate advantages of this railroad to him, located as it is, that are to be regarded in your estimate of the injury it does to him."

10. That the proper measure of damages in this case, is the difference between what was the fair marketable value of the plaintiff's land at the time of the appropriation of part of it by defendants, in the hands of a man who could select the time and fix the conditions of sale, and what its fair marketable value will be when defendants' railroad is constructed.

Answer: " This point is affirmed. The fair and marketable value of property is not what it will bring at a forced sale, nor what may be obtained for it by a man able and determined to hold it at his own terms and price, but what may be had in the market, by fair effort to sell, on usual or customary terms, by a party *bonâ fide* determined to sell on fair terms at market price."

11. That in estimating the damage to the plaintiff's land, the jury are to take the fair market value of plaintiff's land, at the time of the appropriation by the defendants, without regard to the causes which may have contributed to make up that value.

Answer: " This point is affirmed in all respects, except so far as the expected location of the road itself affected the value of plaintiff's land before it was actually taken for the road, if it had any such effect. The road cannot be made to pay for any increase of value which itself may have produced. The fair market value of plaintiff's land at the time of the appropriation by the road, without any prospect or expectation of this railroad

passing through it, is the proper mode of estimating the part taken, and that value is not to be an imaginary value, but to be predicated, as far as possible, on the best proof of market value which the nature of the case will admit, viz., actual sales of property of equal quality, similarly situate in the immediate neighbourhood, at and about the time referred to."

12. That the jury, in estimating the damages in this case, are to take the value of the land at what it would be in the hands of a man who could select the time and fix the conditions of sale; not what it would be at a forced cash sale.

Answer : " For an answer to this point, reference is made to answer to No. 10.

" If it is intended hereby to affirm that the jury are to take as the value the price it would be held at in the hands of a party who would hold for speculation, at his own time and terms, the proposition is negatived. It is held by the best authorities on the subject, that as between individuals a party may ask what he pleases, but when land is taken for such purposes as this, he can only be allowed its real value, and that is its market price at the time."

13. That if they believe that the plaintiff's land over which defendants' road is located was laid out in building lots of twenty-five feet front by one hundred feet deep, prior to the appropriation of the same by the defendants, then the jury may, in estimating the damages of the part taken, assess the damages according to the value of the land, as subdivided into lots.

Answer: " This point is affirmed. The jury may so assess if they so find the fact to be, and further believe that that mode or measure of estimation will be the most accurate whereby to ascertain the fair actual market value of the property, at the time of its appropriation by the railroad."

14. That the plaintiff is entitled to recover for the cost of new fences which it will be necessary for him to construct.

Answer: " This point is affirmed. In your estimate is to be taken into consideration the first cost of such fence as the plaintiff will be required to make by reason of the railroad—fence of a usual and suitable description. He is to be restored to equal condition, in this respect, as he was found. If, as he alleges, however, he had, before the location of the road, cut up and laid out this particular strip of land into building lots, extending a few feet on either side of the railroad, and had put these lots in the market, intending to sell them, he would not be entitled to fencing. In such a state of affairs fencing is not contemplated to be kept up. Neither would it be in contemplation to run a fence between the railroad and plank-road, where the two are contiguous, or so nearly so as to render the intervening land of the plaintiff unsuitable for enclosure."

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

15th. That the plaintiff is entitled to recover from defendants the sum it would cost to build a new stack in place of that one cut off by the defendants' railroad.

Answer: "This point is also affirmed, if the stack referred to was necessary for the use and purpose for which plaintiff used, and intended to continue to use his furnace; but if his furnace had fallen into disuse and was not intended to be resumed, and the grounds and buildings or part of them required in the business were disposed of, then nothing should be allowed for the stack. On the other hand, if the plaintiff for some other purpose used or intended to keep his furnace in use and operation, and if for such other purpose a different and less expensive stack would serve his purpose equally as well or better than the one destroyed, then he is to be allowed the expense of such new stack, less the value of the material in the old one. In fine, gentlemen, having viewed the premises, and seen with your own eyes the injury complained of; having heard the testimony as to the quantity and quality of the land taken, and the mode and manner of its previous use and occupation by the plaintiff; and also the fair market value of this land at the time of its appropriation and since that time, derived from actual sales of lands similarly located in the same neighbourhood; and being informed likewise by the evidence of the uses and purposes to which plaintiff's land, so taken, is to be applied; the character of the road and its trade and traffic; you are now to take the whole subject-matter into consideration, and if in your apprehension the plaintiff has sustained or will sustain damage by reason of the location and construction of this road through his property, you are to find by your verdict the amount of that injury or damage; and in such estimate you are to pay due regard to the advantages this road will afford to the residue of the plaintiff's property. Regard the plaintiff as he stood before this road was located or had cast any shadow either to enhance or to depreciate the value of his lands; then regard him as he will stand when the road is finished and in operation, and if upon such comparison he suffers loss by reason of the location and construction of this road through his property, ascertain how much, and make him as whole to-day as if the road had never passed through or by him, so that in a pecuniary point of view the plaintiff cannot be regarded as having suffered by reason of this road. Divesting your minds of all prejudice; allowing the fact that the land was taken by a corporation without the plaintiff's consent to have no influence whatever in your finding; your finding is to be predicated on a solid basis of actual existing facts and calculation, not drawing upon the imagination, or finding aught by mere arbitrary force of will or inclination, for such would not be a true finding; and by a proper application of the principles here-

tofore stated, to the legitimately ascertained facts of the case, it may be hoped you will easily arrive at a fair and reasonable—a true verdict, and consequent justice to both parties."

The parties respectively excepted to the answers of the court to the several points on both sides.

The case was argued for plaintiff by *D. Reed, T. B. Hamilton,* and *W. W. Thompson,* who, in support of these propositions, cited and relied on the following authorities, viz.: that the construction of railroad charters authorizing the taking of private property should be liberally construed in favour of the landowner: Packer *v.* Sunbury and Erie Railroad Company, 7 Harris 218; Dugan *v.* The Bridge Company, 3 Casey 309; S. & E. Railroad Company *v.* Hummel, 3 Casey 351, 352, 355; James *v.* Railroad Company, 6 Am. L. Reg. 725; Bird *v.* Railroad Company, 4 Am. L. Reg. 226.

As to the measure of damages, Reitenbaugh *v.* C. V. Railroad Company, 9 Harris 102; Strunk *v.* Schuylkill Navigation Company, 14 S. & R. 71; Schuylkill Navigation Company *v.* Thoburn, 7 S. & R. 411; Same *v.* Farr, 4 W. & S. 362; Commonwealth *v.* Fisher Richter *et al.,* 1 Pa. Rep. 462; Green *v.* Reading, 9 Watts 385; Philadelphia and Trenton Railroad Company, 6 Wh. 25; Zimmerman *v.* Union Canal Company, 1 W. & S. 346; Monongahela Navigation Company *v.* Coons, 6 W. & S. 101; Henry *v.* The Bridge Company, 8 W. & S. 85; Susquehanna Canal Company *v.* Wright, 9 W. & S. 9; Monongahela Navigation Company *v.* Coons, 6 Barr 383; O'Connor *v.* Pittsburgh, 6 Harris 187; New York and Erie Railroad Company *v.* Young, 9 Casey 175; Doage *v.* Commissioners of Essex, 3 Met. 381, 382, 383; 10 Cush. 385; 17 Wend. 666, 667; 7 Barb. 542; 12 Barb. 616, 629; 2 Selden 522; 8 Cowan 146; 3 Eng. Law Eq. Rep. 59; 5 Eng. Law Eq. Rep. 335; 19 Wend. 690; 1 Barb. 294; 25 Vermont R. 94, 363; 16 Barb. 273; 13 Barb. 169; Redfield on Railways 115, 135, 153, 157.

Wherever damages have been refused because consequential, no property was taken from plaintiff, and the refusal was put on this ground.

Where property is taken the owner is entitled to compensation for that which is taken, and the depreciation of what remains: 7 S. & R. 422; 4 W. & S. 375; 1 W. & S. 354; 7 Harris 134; 4 R. 29; 4 Harris 192; 8 Barr 445; 3 Casey 352, 309.

On the admissibility of the opinion of witnesses as to the effect of the construction of the road, they cited Light *v.* Stover, 12 S. & R. 432; Kellog *v.* Krauser, 14 Id. 137; 11 Cush. 203; 5 Grey 421; 13 Barb. 170; 2 Zabriskie 495, 499; 19 Wend. 658; 13 Met. 288; 8 Cush. 279; 19 Wend. 659; 13 Met. 326; 2 Grey 109; 4 Grey 607; McGill *v.* Rowand, 3 Barr 453; White-

[Watson v. The Pittsburgh and Connellsville Railroad Co.]

sell v. Crane, 8 W. & S. 372; Railroad Company v. Heister, 8 Barr 452; Mifflin v. Railroad Company, 4 Harris 182, 192.

*J. H. Sewall* and *J. H. Hampton*, for defendants in error.— The right of the landowner to recover damages is definitely fixed by the charter. The injuries arising from the construction of the road are twofold: one direct and capable of positive ascertainment; the other consequential and speculative. Without special provision there can be no compensation for the latter: Monongahela Navigation Company v. Coons, 6 W. & S. 101; New York and Erie Railroad Company v. Young, 9 Casey; Searle v. The Lackawaxen and Bloomsburg Railroad Company, 9 Casey 57; L. V. Railroad Company v. Lazarus, 4 Casey 203.

The cases cited on the other side to show what are consequential damages are peculiar and dependent on special Acts of Assembly. The testimony offered as to the first assignment of error was too vague; proposing loose opinions for facts. So also of the second and third offers; all which were properly rejected, particularly where the jury had been on the ground and examined the premises in the presence of competent engineers chosen by both parties. The rule laid down in S. & E. Railroad v. Hummel, 3 Casey, is conclusive as to the propriety of rejecting these offers.

The opinion of the court was delivered, January 7th 1861, by STRONG, J.—The constitutional provision which requires that just compensation shall be made, or adequate security given therefor, before private property may be taken for public use by any corporate body or individual, has always been held to contemplate only an actual appropriation. Matters of annoyance, indirect and consequential injuries to property, and acts tending to depreciate the value, but which do not amount to a real "taking," are outside of this provision: 6 Whart. 25; 6 W. & S. 113; 8 W. & S. 85. When, therefore, a canal or railroad company is empowered to take land for a public improvement, it is not responsible for indirect or consequential injuries, unless the liability to pay for them is imposed as a part of the price of the franchise. In many of the charters granted by the legislature, an obligation to make compensation for consequential damages has been imposed, while in others it has been omitted. Resort must always be had to the charter to determine the extent of liability beyond that of making compensation for property actually taken. The assessment, either by appraisers or by a sheriff's jury, can only be made of such damages as the statute incorporating the company requires to be paid.

The act to incorporate the defendants in the present case (§ 10), enacted that whenever it should be necessary for them to

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

enter upon and occupy, for the purpose of making their railroad, any land upon which the same might be located, if the owner or owners of the said land should refuse to permit such entry or occupation, and the parties could not agree upon the "compensation to be made for any injury or supposed injury that might be done to said land by such entry and occupation," they might appoint appraisers to estimate the damages. If they could not agree upon appraisers, the act authorized the Courts of Common Pleas to appoint six disinterested men, and made it the duty of those men to examine and survey the said lands, tenements, or hereditaments, and estimate the injury or damage, if any, that, in their apprehension, will be sustained, as aforesaid, by reason of said road. They are also required, in estimating such injury and damage, to take into consideration the advantages that will be derived to the owner or owners of said land from the said railroad, and an appeal from their assessment is allowed to the court. The act makes no farther specification of the damages which the company is required to pay. It does not, as do many of the acts incorporating railroad companies, directly require that in the assessment of damages, the "disadvantages" or "inconveniences" which may be likely to result from the railroad, shall be taken into consideration. It would be a narrow construction, however, were we to hold that the legislature did not intend an assessment of all the damages, which are the direct and immediate consequence of the construction of the railroad to the whole tract of land through which it may pass. It is upon the whole tract that the road is located, though only a part is actually occupied. The injury is therefore done to the tract as a whole, of whatever components that injury may consist. The exclusive appropriation of a part, the inconvenience arising from division, or from increased difficulty of access, and the cost of additional necessary fencing, are alike the direct and immediate result of the construction of the railroad. Nothing can be recovered for anything which is not groundwork for damages at common law; but the construction which has been given to the legislative charters for improvement companies generally, has been that they are intended to secure compensation for all such injuries as the common law recognises as fit subjects for compensation. And this has been held, notwithstanding considerable differences in the language employed by the legislature: 3 Casey 99.

We understand that, on the trial of the case now in hand, these principles were fully recognised. The plaintiff was permitted to show everything that could be legitimately taken into consideration by the jury in estimating the damages. Even the mode of measuring them, for which he contended, was accorded to him by the court. He was allowed the benefit of the rule

[Watson *v.* The Pittsburgh and Connellsville Railroad Co.]

laid down in Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 411, that the true measure of compensation is the difference between what the whole property would have sold for, unaffected by the railroad, and what it would have sold for as affected by it. Nor was the advantage of this rule in any degree taken from him by the rejection of the evidence which he offered. His attempted *mode* of proof of the difference between the two values, was entirely inadmissible; and here was the reason for the rejection of his evidence. His offers all had the same fault. They proposed to submit to the jury the conjecture of the witnesses as to what the plaintiff's lands would be worth, or what their market value would be at some unknown future time, when the railroad shall have been constructed. Such testimony does not rise even to the standard of an opinion. It is a mere guess, with no substantial foundation upon which to rest. When damages are assessed after the completion of a railroad, it is possible to prove, with some reliable certainty, the difference in the market value of the land through which it passes, caused by its construction. Then the value at the time of the entry on the land is known, and so is its value as affected by the improvement. In a certain sense, indeed, an estimate of present or past value is an opinion, but it has a measure which insures proximate accuracy. An estimate of what property will be worth at a future day, or in an altered condition, is entirely without guide or measure, and must be wholly fanciful. And the proffered evidence was objectionable for other reasons. It proposed to prove that, by reason of the entry on the land, and occupation of a part, and by reason of the railroad, the property would be depreciated in value, without confining the witnesses to a consideration of the direct and necessary consequences of such occupation. It left them at liberty to take into their estimate any consequences, no matter how remote, without regard to the question whether they were such damages as the law allows to be compensated. This ought not to have been permitted.

We think, therefore, the court was right in rejecting the evidence.

The judgment is affirmed.