John K. Gilchrist, Guardian, v. Matthew J. Brown et ux., Appellants.

*Ejectment—Resulting trust—Evidence—Duty of chancellor.*

In an action of ejectment to enforce a resulting trust the judge is, as to the question of the existence of the resulting trust, a chancellor, and if the evidence is in his judgment insufficient to sustain a verdict, it is his duty to withhold it from the jury.

*Husband and wife—Resulting trust—Deferred payments.*

In order to sustain a resulting trust in favor of a wife who has contributed a portion of the purchase money of real estate, the title to which is taken in the name of the husband, it is not necessary that the money of the wife should have gone into the land at the inception of the husband's title by an actual payment of it at that date. It is enough if it be paid as installments or incumbrances fall due, provided such payments are made in pursuance of the contract under which the title was acquired, and upon the agreement that she is to recover the title to so much as she pays for in exchange for her money.

Argued Oct. 16, 1894. Appeal, No. 205, Oct. T., 1893, by defendants, from judgment of C. P. Butler Co., March T., 1893, No. 219, on a verdict for the plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for an undivided interest in land. Before HAZEN, P. J.

On the trial plaintiff showed title as purchaser at sheriff's sale of the interest of Matthew J. Brown, in whom the record title stood. Defendants attempted to show a resulting trust for an undivided interest in the property in Brown's wife by payment of part of the purchase money. Both defendants testified that the payments were to be made with her money under the express agreement that she was to have title in proportion to the payments made with her money. They testified that Mrs. Brown received her money from her father's estate in sums of $15 and less, and laid it aside to pay for the property. Brown testified that he used it to pay on account of the property, but also that some of it was used to buy stock with and for other purposes, and the sums paid were not clearly identified. The purchase was made by exchange with a Miss Christie.

The court charged in part as follows:

" The evidence in support of this agreement is solely that of defendant and her husband, and she does not testify to any personal knowledge of the payment of any of her money on the difference between the two farms. All she testifies to in relation to this matter is what she receives from her husband, and that is secondary evidence. Then all the evidence that you have before you on the question of the payment of her

money, upon the difference between these lands, is solely upon his testimony. So far as appears in the evidence—and what does not appear must be presumed not to exist—no one ever heard of the alleged agreement until the day of the sheriff's sale, when it was unearthed; when in the throes of labor after nearly twenty-three years of gestation it was born out of time and then claiming in size to be five sevenths of the whole property, and now upon the trial it has dwindled down in size to three-fifths. Every act of the defendant's husband in this matter relating to this whole transaction, in taking the deed, in conveying his own, in giving the bond, his own testimony in regard to assuming the judgments, is in perfect harmony with the actual ownership of the land, and that the money of his wife's separate estate used was either a loan or gift to him and not an investment. The deed was made direct to him; the bond to his vendee for the difference between the liens and boot money was his bond, his wife's name not referred to; the receipts upon the record when the judgments against the land, received by the conveyance from Miss Christie, were paid, do not show, as they were read in evidence, any relationship to Mary M. Brown. It is a singular coincidence that in the papers offered there is not one scintilla of evidence that she had any interest in this transaction. The assessment of the property for tax purposes was in his name, the use of the property was as though it was actually his; the possession of it for so long a time raises a presumption of actual ownership in Matthew J. Brown, not in his wife.

" True, the intimate relationship existing between husband and wife must be considered and he may do many things as her agent, but when rights of others must rise or fall upon facts growing out of transactions between parties so closely allied, they must be cautiously scrutinized. We are not intimating that there are suspicious circumstances or fraudulent circumstances about this case, but only that we ought to regard them with much care and hesitation until made out by such evidence as the law has made necessary. Titles are dependent to a great extent upon records, and in cases of alleged resulting trusts which are supported by oral evidence alone, the law properly requires that the evidence to prove the needful facts must be of a very high quality.

" It has been said in a very recent case, and we follow that instruction because it is binding upon us: That every element of such a trust must be made out by evidence which is clear, explicit and unequivocal. Evidence which is clear, evidence which is direct, positive, and evidence which is not doubtful. Every element of such a trust must be proved by clear, explicit and unequivocal evidence, and if any element of the case fails in these respects, although the other elements may be made out by evidence which comes up to the proper standard, the case fails. Applying that principle to this case, before defendant can defeat plaintiff's recovery of the land in suit in whole or in part, on the ground or by reason of a resulting trust in her, she must prove, as we have already stated, an agreement made before the taking of the title to the land by her husband; she must also prove that in pursuance of that agreement her money was applied—not afterwards applied or voluntarily by herself, that is not enough—but that her money was so applied in fulfillment of the agreement, and if the agreement entered into before the land was taken by her husband did not include this fact that she was to apply her money to the payment, then we say to you that you must find for the plaintiff. In other words, the agreement preceding the taking of the land must have provided for these three things: First, that her husband was to take the land for her benefit in whole or in part. Second, that her money was to pay for it. Third, that her money in pursuance of this agreement was so used in paying for it.

"Gentlemen of the jury, you take ordinarily the evidence and you pass upon it, weighing it with care, but with the view this court holds, instruction on that point is unnecessary, as will presently appear.

" The evidence of this agreement between husband and wife, Matthew J. Brown and Mary M. Brown, is not clear, it is not precise, it is doubtful; general answers to questions asked, without facts to support the conclusions given, are unsatisfactory; it is loose, it is not convincing. This good woman may have understood, and doubtless she now honestly believes, that there was such an agreement made nearly a quarter of a century ago, but what evidence, what testimony, does she present upon the witness stand for you to support that conclusion

upon? As to Matthew J. Brown, the other witness, we do not say that he does not honestly believe what he testifies to, but is it clear, is it precise, and is it convincing that such an agreement at that time existed; or do his acts, as shown by his testimony and the testimony of his good wife in regard to the receiving of moneys belonging to her separate estate, which it is admitted she had, convince you that it was received in another way or for any other purpose than to be used in dribs as he received it?

"To this court it is too loose, and we could not support a verdict upon such evidence, if rendered. If it was a question before the court sitting as a chancellor in a proceeding in equity, it would be the duty of this court to decide against the defendants. If a land title of record, so clear and so concise, surrounded by such actions as are shown in this case, conformed to and in support of its authenticity, is to be overturned by such evidence, we want it done by the court of last resort, and not by the court over which it is our duty to preside. Land titles are too sacred for such work, until our superiors lay down the rule which it will be our duty and pleasure to follow. I speak thus not unmindful of the sympathy that comes up in my mind for this good woman, for if I were to follow the lead of sympathy, regardless of my duty, I would feel like speaking differently to the jury, and if it be the pleasure of the Supreme Court, to which I trust this case will go, to reverse it and send it back, that she may receive the portion she claims, no one will be better pleased than this court.

"Having affirmed a point here which gives you binding instructions to find for the plaintiff, it leaves you, gentlemen, nothing to do but to return a verdict in favor of the plaintiff and against the defendants for the land described in the writ, with six cents damages."

Plaintiff's points were among others as follows:

"1. Where it is alleged that purchase money was furnished by a wife, to establish a resulting trust in her, it should appear by clear proof that her money went into the land at the inception of her husband's title, that the purchase was made by her or for her account, and that placing the title in her husband was in violation of an agreement that the deed was to be made to her." Affirmed. [1]

" 2. To sustain a resulting trust by oral evidence as against the deed for the land in this case, the law requires more than ordinarily high degree of proof; every element of such a trust must be proved by clear and explicit evidence; it must be shown that at the inception of the title, although the deed was taken in the name of Matthew J. Brown, the purchase money, either in whole or in part, was furnished by Mary M. Brown, and that the agreement then was she was to have title for the land so purchased. On failure of the defendants to so prove, the verdict should be for the plaintiff." Affirmed. [2]

Defendants' points were among others as follows:

" 4. If the jury believe that Matthew J. Brown acted as the agent of his wife, Mary M. Brown, in receiving money coming to her from her separate estate as it matured, and assumed payment of the incumbrances against the land in suit, and this was in pursuance of an understanding or agreement between them at and before the exchange of lands, and applied the money so received, on the difference between the lands exchanged, from time to time, these payments reflected back to the inception or the purchase or exchange, and raise a resulting trust in favor of Mary M. Brown to the extent of the money she contributed. *Answer :* This is not affirmed, unless the jury also find that the money, or some of it, was actually paid in consideration of the land at the inception of the title, and the other or remainder was actually set apart at the time for the purpose of paying for land." [10]

" 6. If the jury believe that Mary M. Brown, acting through her husband as agent, paid Eliza Christie $50 on the purchase money at the time the exchange of lands was agreed upon, and which was to be applied on the incumbrances against the land in suit then due, and afterwards furnished the money to pay off all the incumbrances as well as any balance due on the purchase money, this would be a sufficient payment at the inception of the title to create a resulting trust in her favor. *Answer :* This is not affirmed, unless the jury find also that the separate estate of Mary M. Brown was used at the inception of the title to the land in dispute to make the payment, and was the credit upon the faith of which the conveyance was made and afterwards was so used." [12]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* among others were (1, 2, 10, 12) answers to defendants' point as above, quoting points and answers; (15) in instructing the jury that Matthew J. Brown and Mary M. Brown constitute but one witness in law; (16) in directing a verdict for plaintiff.

*Lev. McQuistion, J. C. Vanderlin* with him, for appellant.— The evidence was sufficient to sustain a resulting trust: Campe v. Horne, 158 Pa. 512; Light v. Zeller, 144 Pa. 570; School District v. Mercer, 115 Pa. 559; Miller v. Baker, 160 Pa. 172.

The mere fact of the balance of purchase money not having been paid at the time the deeds were delivered is immaterial.

The court below committed an error in instructing the jury and affirming plaintiff's point to the effect that the husband and wife were but one witness in law. This he doubtless did on the strength of the cases of Sower v. Weaver, 78 Pa. 448, and Bitner v. Boone, 128 Pa. 567. These cases, however, are explained and commented on by Mr. Justice PAXSON in the case of Yost v. Mensch, 141 Pa. 85.

*Newton Black, George W. Fleeger* with him, for appellee.— The evidence was insufficient to sustain a trust: Crawford v. Thompson, 142 Pa. 551; Cross v. Gault, 97 Pa. 471; Nixon's Ap., 63 Pa. 282; Barnet v. Daugherty, 32 Pa. 371; Kline's Ap., 39 Pa. 468.

If a wife after discovering the title was taken in the name of her husband, allows the title to remain in her husband until after he contracts debts, she will be estopped as against such creditors from denying her husband's title: Young v. Senft, 153 Pa. 353.

The judge sits as a chancellor; it is his duty to view and weigh the facts for himself and to withdraw the evidence from the jury when it is not such as ought in equity and good conscience to induce a decree of specific execution: Reno v. Moss, 120 Pa. 67; Piersol v. Neill, 63 Pa. 420; Murray v. R. R., 103 Pa. 37; O'Hara v. Dilworth, 72 Pa. 397.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895:

This action was brought by a purchaser at sheriff's sale to obtain possession of a farm bought by him under a judgment against Matthew J. Brown. No question is raised over the

regularity of the proceeding or the validity of the sheriff's sale. On the contrary it is conceded that the purchaser acquired the title of the defendant. The defence set up relates to an undivided three fifths of the farm which, it is alleged, Mary M. Brown, wife of Matthew J. Brown, is entitled to under a resulting trust originating in 1868. The facts relied upon to raise the resulting trust are as follows: Brown was the owner in 1868 of a farm on which he resided containing thirty-seven acres. Margaret E. Christie owned another farm in the same region containing one hundred acres. For their mutual benefit an exchange of these farms was agreed upon, the difference in values to be left to three men selected by the parties to determine, and to be paid by Brown to Margaret Christie so as to meet the liens resting on her farm. In pursuance of this agreement the three appraisers valued the Christie farm at eighteen hundred and seventy-five dollars, and the Brown farm at twelve hundred. This left a difference of six hundred and seventy-five dollars to be paid to Margaret E. Christie in money. Deeds were exchanged in October, 1868, and Brown assumed the payment of the judgments against the Christie farm, amounting to four hundred and thirty-two dollars and fourteen cents, and gave his bond to Miss Christie for two hundred and forty-two dollars and eighty-six cents to make up the full sum of six hundred and seventy-five dollars, the difference between the appraised values of the two farms. Mrs. Brown alleges, and it does not seem to be seriously controverted, that she furnished the money to pay the judgments and the balance due to Miss Christie, from her separate estate. This she claims she did upon an agreement that she was to have an interest in the land corresponding to the part of the whole price paid by her. By virtue of this agreement and the payment of the six hundred and seventy-five dollars of the purchase money, she contends that her husband became a trustee for her as to such part of the title as was paid for with her money.

The learned judge, after having heard the testimony, was of opinion that the evidence in support of the alleged contract was wholly insufficient to justify a chancellor in sustaining a verdict in its favor. He said, speaking of the evidence, on this subject, "it is too loose, and we could not support a verdict upon such evidence if rendered. If it was a question before the

court sitting as chancellor in a proceeding in equity, it would be the duty of the court to decide against the defendants." This was a sufficient reason for withdrawing the case from the jury and directing their verdict. The answers to points become therefore practically unimportant since the case turned upon the sufficiency of the proofs to justify the submission of the existence or effect of the alleged contract. If this was not so, several of the assignments of error would require us to reverse this judgment.

The answers to the first and second of the plaintiff's points require qualification, for as they stand they would be misleading. It is not necessary that the money of the wife should have gone "into the land at the inception of the husband's title" by an actual payment of it at that date. It is enough if it be paid as installments or incumbrances fall due, provided such payments are made in pursuance of the contract under which the title was acquired, and upon the agreement that she is to recover the title to so much as she pays for in exchange for her money. The same error runs through the answers to other points, particularly that to the defendants' fourth point. This point asked an instruction upon the sufficiency of certain assumed facts to raise a resulting trust. The answer was in these words: " This is not affirmed unless the jury also find that the money or some of it was actually paid in consideration of the land at the inception of the title, and the other or remainder was actually set apart at the time for the purpose of paying for land." This would be understood as an instruction that payments of purchase money made subsequently to the date of the contract, although in strict compliance with its terms, would not support a resulting trust, no matter how clear and distinct the agreement might be that she should be treated as a purchaser to the extent of the money furnished by her. If the case had gone to the jury this instruction could have been successfully complained of.

The fifteenth assignment raises a question that has no practical importance in this case. If the testimony of Brown and his wife had been submitted to the jury it would have been important that the jury should know whether they were to be treated by them as one or as two witnesses; but as the testimony of both of them was, in the judgment of the learned judge,

too loose, indefinite and unsatisfactory to sustain a verdict, and was for this reason withheld from the jury, the question played no part in the determination of this case in the court below, and in this court it is a question in thesi merely.

The last assignment alleges error in the withdrawal of the case from the jury. We cannot sustain this assignment. The judge was, as to the question of the existence of the resulting trust, a chancellor. If the evidence was in his judgment insufficient to sustain a verdict, it was his duty to withhold it from the jury: Reno v. Moss, 120 Pa. 67; Wylie v. Mansley, 132 Pa. 65. In such case it becomes unnecessary to answer points asking instructions to the jury, since the case does not go to them. It is enough if the judge puts upon the record his reasons for refusing to submit the case to the jury so that they may be reviewed by this court. That was done in this case. We are satisfied with the reasons given, and upon that ground the judgment is affirmed.