Skarupski et ux. *v.* Sielinski et ux., Appellants.

Submitted April 23, 1931.

Before TREXLER, P. J., KELLER, GAWTHROP, CUN-
NINGHAM, BALDRIGE and DREW, JJ.

*Walter L. Dipple,* and with him *David L. Waldron,*
for appellants.

*J. I. Simon,* and with him *Barney Phillips,* for ap-
pellees.

PER CURIAM, July 8, 1931:

Defendants have appealed from a decree of the court below (hereinafter quoted at length) adjudging that they hold title to an undivided one-half of a certain lot in the Fifth Ward of the City of Pittsburgh in trust for the plaintiffs, specifying the terms upon which plaintiffs and defendants are entitled to occupy respectively the two houses thereon erected, restraining defendants from conveying or encumbering more than their own undivided one-half interest in the premises and directing them to execute and deliver to plaintiffs a deed for an undivided half interest therein upon compliance by plaintiffs with certain conditions. Their appeal was submitted without oral argument. The pleadings, bill and answer raise the issue whether defendants hold title to an undivided one-half of the lot—with two frame houses, one occupied by plaintiffs and the other by defendants—as trustees for plaintiffs on a trust resulting from payment by plaintiffs of purchase money, the possession of one-half of the premises by them and the making of improvements. There was testimony to sustain the following findings of fact by the chancellor:

"1. Plaintiff, Agnes Skarupski, is a daughter of the defendants and plaintiff, Julius Skarupski, is her husband.

"2. On March 22, 1920, the Winterton Land Company and defendants entered into a written agreement of sale in which the Winterton Land Company agreed to sell and convey to the defendants certain premises in the Fifth Ward of the City of Pittsburgh, consisting of a lot fronting forty-two feet more or less on Colmar Street, with a depth of ninety-three feet more or less and a width at the rear of eighteen feet, on which lot were erected two two-story frame dwelling houses, for which it was agreed defendants should pay to the Winterton Land Company the sum of $4,700.

"3. On May 28, 1920, the Winterton Land Company delivered to defendants its deed conveying said premises to defendants, which deed is recorded in Deed Book, Vol. 1989, page 540 in the recorder's office of Allegheny County, and the defendants executed and delivered to a building and loan association a mortgage for three thousand dollars, which is recorded in Mortgage Book, Vol. 1761, page 62, and there was paid to the Winterton Land Company the purchase price of said premises, to wit, $4,700, since which time the legal title to said premises has been vested in the defendants, John Sielinski and Augusta Sielinski, his wife.

"4. Since May 28, 1920, until the present time Julius Skarupski and Agnes Skarupski, his wife, the plaintiffs, have occupied one-half of said premises, to wit, the dwelling known as No. 3632 Colmar Street, and the defendants, John Sielinski and Augusta Sielinski, his wife, have occupied the other house on said premises, to wit, the dwelling at No. 3634 Colmar Street.

"5. Prior to the purchase and occupancy of the premises referred to in the preceding findings of fact, plaintiffs and defendants had occupied the same dwelling house. After a conversation between plaintiff, Julius Skarupski and defendant, John Sielinski, the latter instructed the former to look about for a property which could be purchased and used by the families of plaintiffs and defendants, and pursuant to this authorization plaintiff, Julius Skarupski, made inquiry and discovered that the property referred to in the findings of fact could be purchased for $4,700, and so informed the defendant, John Sielinski, who assented to the purchase thereof, and plaintiff, Julius Skarupski, arranged for the purchase of said premises and was the active agent on the part of the purchasers. The understanding between the plaintiff, Julius Skarupski and the defendant, John Sielinski being as expressed by Julius Skarupski and John Sielinski, with-

out any dissent by the latter, which understanding was confirmed a number of times afterwards by the declarations of both defendants, that plaintiffs and defendants were to own, use and pay for said premises in equal shares, half by each, or to use their own words, on a fifty-fifty basis.

"6. At the time of the transfer of the property in question to defendants, three thousand dollars of the consideration was paid by placing a three thousand dollar mortgage on the premises and of the remaining seventeen hundred dollars plaintiff, Julius Skarupski, paid five hundred dollars and defendant, John Sielinski, paid twelve hundred dollars, and as stated, plaintiffs went into possession of one house and defendants into the other, since which time plaintiffs have paid one-half of the taxes, water rents, insurance, repairs, and one-half of the principal and interest on the mortgage and the defendants have paid the other half of said charges, and by their joint efforts the mortgage at the time of the trial had been reduced to the sum of $1,024.05. Plaintiffs had thus paid $987.97 on account of the principal of the mortgage and $787.58 on account of interest. It was the agreement that when the mortgage was reduced to the amount of $700 plaintiffs were to pay that balance themselves in order to equalize their payments with the payments made by defendants.

"7. During the occupancy of one-half of the premises involved by the plaintiffs, a two-car garage has been erected thereon, one-half of the cost of the material being paid by plaintiffs, who also provided all the labor for the erection of it. During this period the house was wired for electricity, and plaintiffs paid one-half the cost of this improvement. A concrete sidewalk was put down on the premises, for the material of which plaintiffs paid one-half and provided most or all of the labor.

"8. While defendants contend that the five hundred dollars which Julius Skarupski paid on account of the purchase price of the premises was a loan to defendants and that plaintiffs occupied one-half of said premises as tenants of defendants, no lease to plaintiffs from defendants was ever executed, nor was any money ever paid to defendants as rental on said premises, and no note or other evidence of indebtedness was given by defendants to plaintiffs for the five hundred dollars, nor has any payment ever been made by defendants to plaintiffs on account of the said five hundred dollars, nor any demand made for such payment.

"9. On a number of occasions since the premises were purchased and occupied by the parties as herein found, plaintiffs have demanded of defendants that they, to use their own words, 'put their names on the deed,' meaning by this that their title should be made a matter of record, and defendants at all times refused to comply with these demands of plaintiffs.

"10. On or about the first of November, 1929, defendants notified plaintiffs to vacate the premises at 3634 Colmar Street, and that if plaintiffs refused to vacate the same they would evict them therefrom."

The discussion by the chancellor, GRAY, J., reads:

"Defendants contend the initial $500 of plaintiffs, which it is admitted was paid on the purchase price of the premises involved in this case, was loaned by plaintiffs to defendants, and that plaintiffs' occupancy of the premises has been as tenants of defendants, and that at all events defendants cannot be held to be trustees of a one-half interest in the premises for plaintiffs because of the statute of frauds and the limitation of actions thereunder.

"After mature consideration of the arguments and brief of counsel for defendants we have concluded that his contentions are untenable.

"Where real estate is purchased and title taken in the name of one person when the purchase money or any part thereof is paid by another, proof that the purchase money was so paid and title taken by another is sufficient to establish a trust in the title holder for the use of one who provided the purchase money or part thereof and such a trust may be established by parol testimony and is not within the terms of the statute of frauds and perjuries requiring that trusts shall be in writing: Galbraith v. Galbraith, 190 Pa. 225; Wallace v. Duffield, 2 S. & R. 521; Kisler v. Kisler, 2 Watts 323; Gilchrist v. Brown, 165 Pa. 275; Gates v. Keichline, 282 Pa. 584.

"A resulting trust arising by the payment of purchase money provided by one and title taken in the name of another may arise though only a part of the purchase money is paid by one for whose use the title is taken, and the trust will be fixed on the real estate in the proportion which the amount of the purchase price advanced bears to the entire purchase price: Wallace v. Duffield, supra.

"To sustain a resulting trust on account of the purchase money paid by one and title taken in the name of another, it is not necessary that the money should have gone into the land at the inception of the title in the trustee. It is enough if the money is paid by the *cestui que trust* as installments or incumbrances fall due under the contract whereby the title was acquired, and upon the agreement that the party providing the funds is to have title to as much as he pays for in exchange for his money: Gilchrist v. Brown, supra.

"Though the trust must arise at the inception of the title in the trustee and cannot be created by an oral agreement or promise made thereafter, or by payments of money made thereafter without relation to the status of the parties as fixed at the inception of

the title, that a trust relationship did arise at the inception of the title can be proven by oral declarations of the trustee made thereafter, such declarations not being received to prove any relationship established after the inception of the title, but only to prove the relationship that did exist at the inception of the title: Wallace v. Duffield, supra; Kisler v. Kisler, supra; Gates v. Keichline, supra.

"Plaintiffs' right of action is not barred as contended by defendants by the terms of section 6 of the Act of April 22, 1856, P. L. 532, which provides that: 'No right of entry shall accrue, or action be maintained for a specific performance of any contract for the sale of any real estate......or to enforce any implied or resulting trust as to realty, but within five years after such contract was made or such equity or trust accrued, with the right of entry, unless such contract shall give a longer time for its performance ......'

"The limitation of action under this act does not apply where the *cestui que trust* has taken possession: Keck v. Vandyke, 292 Pa. 532, in which case it was held laches would not be imputed to one in peaceable possession because of delay in resorting to a court of equity to establish his right to the legal title. His possession is notice of his equitable rights, and he need only assert them when occasion demands.

"The doctrine that part performance of an oral contract within the statute of frauds will entitle a party to specific performance of the contract is established law in Pennsylvania: Hancock v. Melloy, 187 Pa. 371. "The doctrine of part performance is based upon the principle that where a contract is so far performed that the parties could not be restored to their original position if the contract was rescinded it would be highly unjust to allow any technical objection to the contract to be interposed. If the purchaser has gone

into possession upon the faith of a parol agreement and has paid the purchase money and has made valuable improvements, the vendor will not be suffered to set up the statute of frauds as a ground for refusing to execute a conveyance: Bispham's Principles of Equity, 8th Edition, Sec. 384.

"In this case it is conceded that plaintiffs paid $500 of the purchase money. Defendants' contention that this payment was a loan to them is unreasonable. None of the incidents of a loan are attached to this transaction between these parties. It is established, therefore, that plaintiffs paid a part of the purchase money at the inception of the taking of title by the defendants. This payment was not one-half of the cash paid at the time, for defendants paid $1,200 at the time plaintiffs paid $500. Not only did plaintiffs pay a part of the purchase money, but they entered into possession of one of the houses and have been in open, notorious and exclusive possession of this house and one-half of the lot with it for the ten years which have elapsed since the purchase of the property. This possession of plaintiffs was not challenged by defendants until late in 1929, when they notified plaintiffs to vacate the premises, which plaintiffs refused to do. In addition to paying part of the purchase money and their occupancy of one-half the premises, plaintiffs have made one-half of the payments on account of principal and interest due according to the terms of the contract on which the property was purchased, and thus, according to the cases, have made further contributions to the purchase price, which are sufficient to establish the trust relationship between these parties. According to the plaintiffs' testimony the agreement between the parties was that plaintiffs should make up the difference between their original contribution to the purchase price and the defendants' by which defendants paid $700 more cash than the plaintiffs, by paying the

last $700 due on the mortgage, which plaintiffs assert they are ready and willing to do, and we have found this was the agreement between the parties; so that when the purchase price is entirely paid according to the terms of the contract under which the house was purchased, the contribution of the plaintiffs to the purchase price will be as much as the contribution of the defendants. Not only have plaintiffs paid a very substantial part of the purchase money and occupied the one-half of the premises and thus have substantially performed their part of the contract with the defendants, but they have joined with the defendants in making substantial improvements to the property. A two-car garage has been erected. Plaintiffs paid for one-half of the material for the garage and provided all the labor for the erection of it. The houses have been wired for electricity, and plaintiffs have paid for one-half of this improvement. A concrete sidewalk was laid. Plaintiffs paid for one-half of the material and provided all or most of the labor.

"Plaintiffs are therefore entitled to the relief for which they pray, because they have paid a large part of the purchase money and are willing to pay such a share of the remainder of the purchase price as will make their contribution to the purchase price one-half thereof; and because they have had possession of their one-half of the premises and made valuable improvements thereon. They have thus shown a valid resulting trust in the defendants for the one-half interest in the property purchased jointly by these parties under the decisions hereinbefore cited, and their action is not barred by the limitation in the statute. All the testimony, especially the practical interpretation of the relationship between these parties since the property was purchased by their own actions, leads to the conclusion that the property was purchased for the use of these two families in equal shares, and to the

conclusion that the contention of the defendants that the plaintiffs loaned them a part of the purchase price and occupied the premises as tenants is not sustained by the facts of the case.''

The conclusions of law reached by the chancellor, and as amended upon exceptions, were:

"1. John Sielinski and Augusta Sielinski, his wife, defendants, hold title to an undivided one-half of the premises known as 3632 and 3634 Colmar Street, Fifth Ward, Pittsburgh, referred to in the findings of fact herein, the deed for which is recorded in the office of the recorder of deeds of Allegheny County in Deed Book, Vol. 1989, page 540, as trustees for the plaintiffs, Julius F. Skarupski and Agnes Skarupski, his wife, now known as Julius F. Sharp and Agnes Sharp, his wife.

"2. The parties hereto are entitled to occupy the said premises as heretofore, each one paying one-half of the taxes, water rents, payments on account of the principal and interest on the mortgage, and charges for repairs, until the mortgage is reduced to the sum of $700, after which plaintiffs shall pay the entire balance of $700 due on said mortgage and interest thereon until said mortgage is fully satisfied, the parties continuing to pay taxes, water rents and repairs in equal shares, and when said mortgage is fully paid and satisfied the defendants shall make, execute and deliver to the plaintiffs a good and sufficient deed conveying to the plaintiffs the undivided one-half of said premises in fee simple, free and clear of all encumbrances.

"3. Defendants should be restrained from conveying or encumbering anything more than their own undivided one-half interest in said premises, except as plaintiffs may join with them in a conveyance or encumbrance, and except that defendants shall convey an undivided one-half of said premises to plaintiffs when

the mortgage is paid in full, according to the directions of the conclusions of law herein.

"4. The costs should be paid by the defendants."

An exception to the decree nisi was also sustained by the court in banc, with the effect that the decree as finally entered reads:

"And now, to wit, October 4, 1930, it is ordered and decreed that the defendants John Sielinski and Augusta Sielinski, his wife, hold title to an undivided one-half of the premises known as 3632 and 3634 Colmar Street, Fifth Ward, Pittsburgh, Allegheny County, Pennsylvania, referred to in the findings of fact and conclusions of law herein, the deed for said premises to said defendants being recorded in the office of the recorder of deeds of Allegheny County, Pennsylvania, in Deed Book Vol. 1989, page 540, in trust for the plaintiffs Julius F. Skarupski and Agnes Skarupski, his wife, now known as Julius F. Sharp and Agnes Sharp; that the two plaintiffs are entitled to occupy one of the houses on said premises and the defendants are entitled to occupy the other house, with the use of one-half of the land on which said houses are erected, and each shall pay one-half of the taxes, water rents, and cost of repairs, and each shall pay one-half of the payments of principal and interest on the mortgage on said premises until the said mortgage is reduced to the sum of $700, after which said plaintiffs shall pay all the payments on the principal and interest on said mortgage until fully paid and satisfied, when defendants shall make, execute and deliver to plaintiffs a good and sufficient deed conveying to plaintiffs an undivided one-half of said premises in fee simple, free and clear of all encumbrances. It is further ordered and decreed that the defendants are restrained from conveying or encumbering any more than their own undivided one-half interest in said premises, unless a conveyance or instrument creating an encumbrance is

joined in by the plaintiffs, except that defendants shall make the conveyance to the plaintiffs as herein ordered, and defendants shall pay the costs."

The decree is affirmed upon the findings of fact, discussion and conclusions of law of the court below and the appeal therefrom is dismissed at the costs of appellants.