Purman *v.* Johnston et al., Appellants.

Argued October 8, 1941. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*George I. Bloom,* of *Bloom & Bloom,* with him *C. L. V.
Atcheson,* for appellants.

*Adolph L. Zeman,* for appellee.

OPINION BY MR. JUSTICE LINN, November 24, 1941:

This was a bill for a decree that the defendants hold
title to certain land on a resulting trust for the plaintiff,
restraining them from conveying or further encumber-
ing it, and directing that they convey it to plaintiff. He
averred that he delivered to John D. Johnston, one of the
defendants, the sum of $25,000 to be paid in purchase of
a certain house and lot and directed that title be taken in
the name of defendant Johnston and his wife as tenants
by the entireties; that, following the purchase, the plain-
tiff and the defendants entered into joint occupancy of
the property and so remained until sometime in 1930,
when he moved out; that the defendants furnished no
part of the consideration and, without his knowledge, in
1933, encumbered the property with two mortgages ag-
gregating $5,500. Defendants answered, denying that
plaintiff furnished the consideration and averring that,
on the contrary, the plaintiff loaned to John D. Johnston

the sum of $25,000 to enable the defendants to purchase the property for themselves. After replication, the case was heard; the facts were found in accord with plaintiff's contention; argument was heard by the court in banc on defendants' exceptions which were dismissed and the final decree entered. HUGHES, J., dissented, though agreeing with the majority that the chancellor's findings of fact supported the decree; his difference with the majority appears in this sentence: "In reviewing the facts, I am drawn to the conclusion that the weight of the evidence would be contrary to the findings of the Trial Judge." That statement squarely presents the point now for review on defendants' appeal.

It was the duty of the chancellor to find the facts and, likewise, the duty of the court in banc to pass on the exceptions to the findings; this, having been done, the findings now before us have the effect of a verdict of a jury: *Ringer v. Finfrock*, 340 Pa. 458, 464, 17 A. 2d 348. They are supported by evidence which it is unnecessary now to recite at length. It is sufficient to say that there were close business and personal relations between the plaintiff and Mr. Johnston; plaintiff was a stockbroker and had employed Johnston from 1922 to 1930. Plaintiff took over a margin account of Johnston's at a time when the debt was much in excess of the collateral; when the account was closed, there was still owing to the plaintiff about $20,000; this indebtedness is referred to in the 31st finding of fact quoted later in this opinion. He also made gifts to Johnston. Defendants, in 1930, lived in a comparatively small apartment and desired a house. Plaintiff was living with an aged relative and wished to change. Their conversations reached a stage in which the plaintiff directed defendants to find a house. They found one with respect to which Mrs. Johnston telegraphed to plaintiff as follows: "Have found the home. Price high. Would you come and look it over? Would make ideal home for all of us, kitties too." Plaintiff approved the purchase, advanced to Johnston $5,000 as a

down payment on March 21, 1930, and the balance of $20,000 on April 3, 1930; this money was used by the defendants to pay for the house. Repairs and improvements amounting to over $400, and $456.64 insurance premiums for 3 years' fire insurance, were paid by plaintiff. By conveyance through a straw man, the title is now held in Mrs. Johnston's name.

Findings 26, 27, 31 and 32 are as follows: "26. When the parties moved into and occupied this real estate in question Thomas R. Purman was frequently there and on several occasions, designated as ten to twelve, he stayed there over night and occupied the 'guest room', in which room a telephone had been placed at the instance of Thomas R. Purman, listed in his name, having a communication wire separate from that of the house. This telephone remained in the house at least until September 1, 1930. The date of its definite removal is not shown.

"27. Extending up to the fall of 1930 Thomas R. Purman was frequently at the house, made himself at home there whenever he desired, and made recommendations as to improvements and repairs about the house."

"31. At the time of the purchase of the real estate in question the parties defendant had no substantial property or estate. John D. Johnston was insolvent, in that he owed to Thomas R. Purman, through Thomas R. Purman & Company, an indebtedness, after allowing for the collateral pledged, of approximately the sum of $20,000, which he could not then liquidate, and neither of the defendants had any income comparable to the value of the property being purchased and the carrying charges thereon.

"32. At the time the two sums of $5,000 and $20,000 were advanced, there was no note, loan contract, or any security whatever executed or issued by the defendants or either of them, and since that time there has never been any security given or written acknowledgment of a loan, neither have the defendants paid or offered to pay any part of this sum."

The essential findings are supported by the testimony of the plaintiff and by corroborating circumstances shown. Plaintiff's payment of the purchase money, without more, raised a resulting trust in his favor entitling him to have the property transferred to him on demand: *Quinn v. Gormley*, 302 Pa. 360, 363, 153 A. 623; *Farmers' Trust Co. v. Bevis*, 331 Pa. 89, 92, 200 A. 54; *Epstein v. Ratkosky*, 283 Pa. 168, 171, 129 A. 53; *King v. King*, 281 Pa. 511, 513, 127 A. 142; *Casciola v. Donatelli*, 218 Pa. 624, 630, 67 A. 901; Restatement, Trusts, section 440. Compare *Warburton v. Warburton*, 342 Pa. 401, 21 A. 2d 21.

Appellants' argument seeks to distinguish cases sustaining parol trusts in favor of the consideration-payor by contending that, when plaintiff furnished it, he was lending the money to defendants to buy a house for themselves. If that had been the fact, the court would not have made the decree appealed from, for, in that view, it would not have been supported by the record. Appellants' difficulty is that the court found the essential facts against them and the record supports the findings.

Decree affirmed at appellants' costs.