Fitzpatrick *v.* Fitzpatrick, Appellant.

Argued November 25, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thomas B. Hall,* for appellant.

*James F. Masterson,* for appellee.

OPINION BY MR. JUSTICE MAXEY,[1] January 4, 1943:

This is an appeal from the decree of the court below directing the appellant to execute a deed in fee simple to the property in her name at 4915 North Broad Street, Philadelphia, to the personal representative of John E. Fitzpatrick, deceased, and for an accounting for all rents, issues and profits of this property from the date of Fitzpatrick's death to the date of conveyance.

Plaintiff is the widow of John E. Fitzpatrick. She is one of the administrators c. t. a. of his estate and by electing to take against his will she obtained an interest in all of his real estate.

The issue involved in this case is whether or not the transfers of property from the decedent to his sister were gifts inter vivos. On October 10, 1909, the decedent became the lessee of the property in question and he also acquired an option, for ten years, to purchase the property. He exercised this option but before conveyance could be made, the vendor died. Fitzpatrick then secured a decree of specific performance and assigned his right to such performance to his sister, the defendant. The property was in due course conveyed to the defendant. No consideration in fact passed from the defendant to Fitzpatrick for the assignment of his rights under the option, though the assignment did recite,[2] a consideration. The purchase price of the property was $11,000. It was paid by a check drawn on a bank account in the Northwestern National Bank of Philadelphia. The account was in reality the decedent's and had been placed in the defendant's name by the decedent. The defendant

---

[1] Mr. Justice MAXEY became Chief Justice on January 4, 1943, after this opinion was filed.

[2] This recital is not conclusive: Restatement of Trusts, Section 440d, page 1345.

executed to the decedent a power of attorney enabling him to draw checks on this account for his own use. The decedent during his lifetime continued to treat this bank account as belonging to him. It was subsequently increased by the deposit of a check for $7,000, representing the proceeds of a loan made on 82 shares of stock in the Logan Suburban Building and Loan Association. For a long time prior to September 14, 1917, these shares had been owned by the decedent and on that date he placed them in defendant's name. No consideration for this moved from the defendant to the decedent. The latter continued to pay the dues and interest on these shares until the time of their maturity. The matured value of these shares, less $7,000 in payment of the loan, was paid to decedent and retained by him.

The purpose of these transfers of property from the decedent was to preserve the property from attachment on a judgment held by his first wife (then divorced), who had obtained judgment against the decedent for alimony in a suit brought in the state of Tennessee on February 10, 1915. The judgment was later admitted as a claim against decedent's estate in the Orphans' Court of Philadelphia County.

The chancellor found that the decedent held possession and exercised complete dominion over this property, while the defendant exercised no control over it. The decedent appropriated to himself all the benefits from the property and assumed and discharged all the burdens of ownership, such as paying its taxes and meeting its other carrying charges. Defendant told a real estate broker, who wished to obtain a lease on this property, that although title was in her name the decedent was its actual owner. The defendant never exercised any control over this property and she asserted her claim to it only after Fitzpatrick's death, though she refused to comply with the demands decedent made from time to time beginning in the year 1924 that she convey the property to him. One of the findings of the chancellor

was that "the only repairs made by Elizabeth A. Fitz-patrick and expenses borne by her individually were for plumbing which was done in rooms used by her while living on the property." The chancellor also found that "Elizabeth A. Fitzpatrick made no oral promise to hold the property in trust for John E. Fitzpatrick."

Defendant claims that "there is nothing in the case to warrant the chancellor in holding it [this transaction] in any other way than as a gift" of both the real estate and the building and loan stock. Defendant says: "It must be conceded that a gift once concluded is final. It cannot be taken away by the donor by a change of heart. . . ." On the question of the intention of decedent to make a gift, defendant sets forth: "Did the decedent as a matter of fact pay the purchase money? This depends on whose money the proceeds of the Building and Loan shares, and the moneys in the bank account, were." As to the gift of the building and loan shares, defendant and her sister and her brother testified that these shares were a gift. The chancellor said of this testimony: "In the light of the evidence produced by the plaintiff through her own witnesses and by cross-examination of the defendant and her witnesses, the probative effect of the testimony of the defendant, her brother and her sister is of doubtful value." Among the findings of the chancellor are these: "None of the money paid for this property was the individual money of the defendant"; Fitzpatrick "paid all premiums of the eighty-two shares of building and loan stock before and after the shares were placed in his sister's name and in that manner repaid the $7,000 loan, which money was used in the purchase of the disputed property; Fitzpatrick remained in possession of the property until his death."

An issue of fact as to the nature of the transaction involved was clearly raised by the pleadings. The law governing transactions of this kind is set forth by us in *Henderson v. Hughes,* 320 Pa. 124, 126, 182 A. 392, where

we said: "To constitute a valid gift inter vivos, there are two essential elements: (1) an intention or purpose to give, accompanied by (2) a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property, but also to invest the donee with complete control over the subject matter of the gift: (citing cases). . . . The fundamental principle of the law of gifts is that the property transferred be placed beyond the further control of the donor; there must be an absolute parting with all his dominion and ownership; and his right of control and disposition must pass beyond recall. The legal rights of ownership formerly vested in the donor must pass to the donee. If these conditions are not fulfilled, there can be no effective gift. . . ."

The findings of the chancellor, which were approved by the court in banc, are a complete negation of the decedent's intent to make the gift claimed and of such a delivery as to divest the donor of all dominion over his property and at the same time to invest the donee with complete control over the subject matter of the gift.

Since the findings were based on competent evidence, the findings before us have the effect of a verdict of a jury: *Ringer, Admxr., v. Finfrock,* 340 Pa. 458, 464, 17 A. 2d 348; *Purman v. Johnston et al.,* 343 Pa. 645, 22 A. 2d 722.

All the circumstances attending this transaction and the subsequent respective attitudes of the parties in interest toward this property lead a tribunal to the conclusion that the transaction was a purchase money resulting trust and not one of those cases where one party conveys property to another and then asserts the latter's oral promise to reconvey it to the grantor. In such latter case equity will *not* impose a trust upon the property in the grantee's hands: *Metzger v. Metzger,* 338 Pa. 564, 14 A. 2d 285. A purchase money resulting trust arises where a transfer of property is made to one person and

the purchase price is paid by another, and (1) the person by whom the purchase price is paid does not manifest an intention that *no* resulting trust shall arise, and (2) the transferee is not the natural object of the transferor's bounty. See sections 440, 441, and 442 of the Restatement of the Law of Trusts; and *Epstein v. Ratkowsky,* 283 Pa. 168, 129 A. 53, *Purman v. Johnston,* supra. The relationship of brother and sister does not, per se, give rise to a presumption that one is the object of the other's bounty. *Asam v. Asam,* 239 Pa. 295, 86 A. 871.

Appellant also claims that plaintiff's action is barred by the Statute of Limitations. Her contention is correctly disposed of by President Judge OLIVER, in the opinion filed on defendant's preliminary objections to plaintiff's bill, as follows: "It is the settled rule that '. . . laches will not be imputed to one constantly in possession of premises the title to which is in controversy.': *Kepler v. Kepler,* 330 Pa. 441, 448 (1938), [199 A. 198]. See *Uniontown Savings & Loan Co. v. Alicia Land Co.,* 338 Pa. 277, 231 (1940), [13 A. 2d 65]. This applies also as an exception to the so-called five-year statute of limitations on the enforcement of purchase money resulting trusts. Act of 1856, P. L. 532, section 6, 12 PS §83. 'The limitation of action under this act does not apply where the cestui que trust has taken possession.': *Skarupski v. Sielinski,* 103 Pa. Superior Ct. 167, 174 (1931)."

In *Keck v. Vandyke,* 292 Pa. 532, 141 A. 446, this court reiterated what was said in *White v. Patterson,* 139 Pa. 429, 21 A. 360: "Laches will not be imputed to one in peaceable possession of land for delay in resorting to a court of equity to establish his right to the legal title. The possession is notice to all, of the possessor's equitable rights, and he need only assert them when he may find occasion to do so."

The decree is affirmed at appellant's cost.