Vollmer et al., Appellants, *v.* Philadelphia.

Argued January 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused November 29, 1944.

*Adrien Winston Vollmer,* for appellants.

*Joseph H. Lieberman,* with him *Michael D. Hayes,* Assistant City Solicitors, and *Robert McCay Green,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1944:

This is an appeal by Adrien Winston Vollmer and Frederick Wick Vollmer, owners, as tenants in common, of the premises situate at 1436 South Penn Square, Philadelphia, from the 1941 tax assessment on the property, as reduced by the learned court below.

This real estate is strictly commercial. It has a frontage of 26 feet on South Penn Square and a depth of 75 feet, and has upon it a three and a half-story brick building, which is antiquated and has little utility. For many years the property has been vacant, with the exception of the first floor, which for a long period of time up until shortly before the end of 1941, was leased for use as a lunch room and keymaker's shop. Separating this property from South Fifteenth Street, is a narrow strip of ground four feet in width and extending back along that street the full depth of these premises, upon which is erected a one-story structure, occupied by an orange juice stand, stationery stall and jewelry shop. The subject property *is without light, air, or access* from Fifteenth Street and has no rear or side street or alley access.

The city assessor fixed the assessment at $209,000, which the Board of Revision of Taxes of the City and County of Philadelphia sustained. On appeal, the court of common pleas reduced the assessment to $182,000. The owners not being satisfied, took this appeal.

At the hearing in the court below, to meet the burden placed upon them by the admission of the assessment made by the proper officers and approved by the Board of Revision, appellants called a real estate expert, who testified that, in his opinion, the value of the real estate was $104,000. This witness stated that the fact the premises were but four feet from the corner of South Fifteenth Street in no way enhanced their value, and that the property had no corner influence. He said he knew sales and holding prices, and mentioned a sale of adjoining property to Bond Bakers. He added that since the taxes on the property are $6,000 a year, and the income from rent but $4,080 a year, when rented, the property has not been self-supporting for many years; and that it would take an income of at least $16,000 a year to justify a valuation of $200,000. The tenant, who had operated the lunch room on the first floor for years was called. She stated that at least three times as many people used South Fifteenth Street as this portion of South Penn Square, that in the last ten years the type of business in the locality had deteriorated materially, and, in describing the various tenancies on South Penn Square from South Fifteenth Street eastward, said ". . . the little store at the corner [an orange juice stand]; then myself, then a saloon, barber shop, stationery store and a taproom, a watch store—".

The assessor, testifying on behalf of the city, stated that he assessed the property at $209,000, using a base rate of $6,500 a front foot for a depth of 100 feet, less the amount of approximately $1,500 a front foot because these premises are but 75 feet in depth, making a total of $131,000, or approximately $5,038 a front foot, to which he added the sum of $78,000 for corner influence.

The other city witness, a real estate man, fixed the value of the land at $208,000, of which he said $80,000 was for corner influence. He testified: "If you wanted to build it and take in the corner . . . and build up an area, you could get almost a stupendous price, probably far above whatever the assessment would be worth". He said the property has a value today and in the future "for whatever you can do if you have a corner—for assemblage". He said further the property has "strategic value" because "you prevent the people who own that four feet from using it". How this could be done he did not say. The testimony of this witness shows clearly that he entirely disregarded the rule of market value in making his valuation, and that he was greatly and improperly influenced by the erroneous idea that appellants had control of or could get at their pleasure the four-foot strip that separates their property from South Fifteenth Street, and that therefore their property actually was a corner property and should be valued as such. This testimony was so highly speculative and fantastic, so unreasonable, it offered no help to the court in determining market value. "An estimate of what property will be worth at a future day, or in an altered condition is entirely without guide or measure, and must be wholly fanciful": *Watson v. The Pittsburgh and Connellsville Railroad Co.*, 37 Pa. 469, 481; *City of Philadelphia v. Linnard*, 97 Pa. 242; *Chatfield v. Board of Rev. of Taxes*, 346 Pa. 159, 29 A. 2d 685. The testimony of the witness was incompetent and should have been stricken out.

The city witnesses gave no sales or holding prices to support their opinions and refused or failed to consider a recent sale in the vicinity—that of the abutting property at 33 South Fifteenth Street, purchased by Bond Bakers for the price of $80,000, or $4,705 a front foot, which sale was approved by the Orphans' Court. That property, which prevents rear access to the property of appellants, has a frontage of 17 feet on South Fifteenth Street and extends back eastwardly a distance

of 78 feet along Ranstead Street, a narrow alley running parallel to South Penn Square.

The testimony of the assessor was interesting and challenging: when asked if he had considered the property next door, he answered: "Well, this particular lot, 1432-34, is exactly the same size as the subject property. That particular land . . . is now assessed at $131,000 . . . They are both assessed from South Penn Square and their value from South Penn Square is $131,000. But this particular property is situated four feet from the corner. There is now a corner influence of $78,000. instead of $185,250 [he had been considering the Zangerle Table for corner influence and the Hoffman-Neill Table for depth purposes but claimed to have abandoned these "scientific systems" when he found they led him to a perfectly ridiculous conclusion, that this property had a value of $327,210, of which $185,250 was for corner influence]. Now there is a case where you have to disregard tables; where they conflict with your personal judgment and common sense, you cannot use them." He admitted that he had not assessed the adjoining property, 1432-34, which was but 30 feet from South Fifteenth Street, anything for corner influence. To say the least, the testimony of the assessor was confused and conflicting and not convincing. He concluded by remarking "there is no other situation comparable to this one. This happens to be a unique situation in the City of Philadelphia." His testimony, too, as to value, was incompetent and should have been disregarded.

In Philadelphia assessments of property for tax purposes must be made in compliance with the Act of June 27, 1939, P. L. 1199. Section 13 of that statute provides: "All property within the county now or hereafter made taxable by law, shall be valued and assessed by the assessors and by the board at the *actual value thereof*." (Italics added.) We said in *Hudson Coal Company's Appeal*, 327 Pa. 247, 251, 193 A. 8, in interpreting this same phrase in the General County Assessment Law of

May 22, 1933, P. L. 853: "This means nothing more or less than market value. We have defined market value as the price which a purchaser willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied". We said in *Harleigh Realty Co.'s Case,* 299 Pa. 385, 387, 149 A. 653, "If fixing assessments were only a problem in mathematics or an exercise to demonstrate a theory, it might be that the arguments of the representatives of the city could prevail, but the question is one of taxation and 'Taxation is a practical and not a scientific problem': *P. & R. C. & I. Co. v. Northumberland Co. Comrs.,* 229 Pa. 460, 471; *Com. v. P. R. R. Co.,* 297 Pa. 308, 315; *Farmers Loan & Trust Co. v. Minnesota,* U. S. Sup. Ct., Jan. 6, 1930. 'Scientific formulas, arithmetical deductions and mental contemplations have small value in making assessments under our practical system of taxation': *Kemble's Est.,* 280 Pa. 441, 445. We learn from the record that in making up its assessments the city called to its aid an appraisal company, which made certain calculations in accordance with the formulas adopted by it. Each calculation was based on the value of a basic unit of ground 100 feet in depth by one foot in breadth. It would be surprising to learn that any property in the city had ever been actually bought and sold on such a basis."

In the instant case there is no uniformity of assessment. This was found as a fact by the learned court below and given as a reason for reducing the assessment. It is also shown with precision by the Columnar Statement of "Land Assessments Only—S. Penn Square" furnished by the city covering the years 1934 through 1941. This Statement shows for those years that the assessment on this property was maintained at $209,000 while the assessment of every other inside property in the block was reduced from 23 to 44 per cent. The action

of the learned court in reducing the assessment did away entirely with the prima facie case of the city.

Appellants contend there is no competent testimony to support the conclusion of value of the learned court below, that it is against the weight of the evidence, and that it is based upon error in believing that the prima facie case of the city had not been overcome.

In this type of case the weight of the evidence is before this Court: *Chatfield v. Board of Rev. of Taxes,* supra. The findings of fact of the court below have great weight and we will not set them aside unless clear error appears. In the appeal the proceeding is not de novo but if the findings of fact of the court below are not based on the weight of the testimony they will be set aside by us: *American Academy of Music Appeal,* 321 Pa. 433, 184 A. 657; *Westbury Apartments, Inc., Appeal,* 314 Pa. 130, 170 A. 267; *Lehigh & Wilkes-Barre Coal Co.'s Assessment,* 298 Pa. 294, 148 A. 301. While it was not the intention of the Legislature to make this Court a super-board-of-revision of taxes, yet, as was said, in *Glen Alden Coal Co. v. Commissioners,* 345 Pa. 159, 167, 27 A. 2d 239: "If the conclusions of the court below are in whole or in part based on impractical considerations or, conversely, *if the court below fails to give any weight or due weight to a practical consideration relevant to the issue trying,* it is our duty to reverse or appropriately modify its decree."

There is some confusion in the record as to what amount the court allowed for corner influence, $1,540 or $1,962 a front foot. This was occasioned by an error of the court in concluding that the agreed basic assessment, before corner influence, was $5,460 a front foot ($141,960) while in fact it was $5,038 a front foot ($131,000). This is shown by the testimony of the assessor, who made the assessment and should know most about it; he said this property and that next door were alike and assessed at $131,000, to which he added $78,000 against the instant property for corner influence. And

this is conclusively proven by simple mathematics. If the assessor's $78,000 is added to the $141,960 the result is bound to be $219,960. All agree the assessment was $209,000. But if the assessor's $78,000 is added to the $131,000, which he says was the base, the result is $209,000—the exact amount of the assessment. Since the court reduced the assessment by $27,000, from $209,000 to $182,000, and did not disturb the basic rate, he actually took off $1,038 a front foot for corner influence, leaving the assessment for that purpose, $1,962 a front foot.

Whatever amount the court allowed for corner influence makes little difference, because the record is devoid of competent testimony to support his finding that the property has a market value of $182,000 for tax purposes. When the learned court below concluded that the prima facie case was overcome, as is shown by the reduction of the assessment, there was nothing left to justify his finding as to value. "In tax cases, like all others, courts must be guided by the evidence in determining what are proper valuations": *Kemble's Estate,* supra; *Pennsylvania Stave Co.'s App.,* 236 Pa. 97, 84 A. 761.

Decree reversed, and a new trial ordered.

Mr. Chief Justice MAXEY concurs in the result.

DISSENTING OPINION BY MR. JUSTICE LINN:

It is important to keep in mind the precise question for decision: whether the evidence supports the finding made by the learned court below; the question is not whether this court would have made the same finding, but whether there was evidence from which the court below could make it.

The appellants complain that the court below assessed their property too high for the year 1941. The circumstances are very unusual. The property is in the center of Philadelphia's business district. The building

has little value. The lot has a frontage of twenty-six feet on the south side of South Penn Square, extending eastward from a point four feet east of 15th Street. Such a lot, only four feet from 15th Street, is worth more per front foot than one in the middle of the block. For convenience, in the valuation of city lots, the term "corner influence" has been used to describe this element of value, though corner influence itself is composed of a number of elements and varies with location. As appellants' lot is only four feet from the corner, it, and any structure on it, are more accessible from both 15th Street (a very much travelled street) and South Penn Square than property in the middle of the block or farther from the corner. Such a lot only four feet from the corner is not only enhanced in value by the element of accessibility from two streets, but because of that accessibility, is to be preferred over a property away from the corner for light, air, police and fire protection, and (in a business section) for advertising purposes.[1] In valuing appellants' property, the court should consider, as an important circumstance in the problem, that the four feet between it and 15th Street cannot reasonably be developed unless both it and appellants' property are acquired in common ownership. The fact, if it should be a fact, that neither owner has been willing to put his property to such use as the location reasonably suggests, is no reason why the public should be deprived of the contribution to taxes which land so situated and appropriately improved should pay. No central property, allowed to lie undeveloped, should, by reason of that fact, escape contributing its proper proportion to the expense of government. The only restriction imposed by the constitution is the requirement of uniformity. If property is assessed uniformly with other property of like character, the constitutional requirement will be

---

[1] Some proof of this is that anyone on 15th Street may now see the large advertisement on the west party wall of appellants' building.

satisfied. The small income which the appellants receive from their unimproved property in the heart of the business district has very little, if anything, to do with the assessment in the circumstances of this case. The learned judge concluded that appellants' property had not been assessed uniformly with other lots in South Penn Square and therefore corrected the error. As there is evidence to support his conclusion, it must be accepted. He considered all the evidence and reduced the assessment of $209,000, made by the Board of Revision of Taxes, to $182,000. The question now should be whether there was legal error in the trial, not whether this court, if authorized to sit as a super board of revision, would have fixed the same or a different amount.

I cannot interpret the record as the majority appears to understand it. The majority opinion quotes and appears to predicate its conclusion on an assessor's testimony: "Well, this particular lot, 1432-34, is exactly the same size as the subject property. That particular land . . . is now assessed at $131,000 . . . They are both assessed from South Penn Square and their value from South Penn Square is $131,000. But this particular property is situated four feet from the corner. There is now a corner influence of $78,000. . . ." The documentary evidence in the record shows that the witness was mistaken. The parties submitted to the court, after the witnesses were examined, a statement which the learned judge ordered made part of the record and which he said he considered in deciding the case. This "columnar statement," which is referred to in the majority opinion and appears at 117a in the record, shows that premises 1432 were assessed at $142,000 for 1941, and not at $131,000, as the witness said. The majority opinion also states: "There is some confusion in the record as to what amount the court allowed for corner influence, $1,540 or $1,962 a front foot. This was occasioned by an error of the court in concluding that the agreed basic assessment, before corner influence, was $5,460 a

front foot ($141,960) while in fact it was $5,038 a front foot ($131,000). This is shown by the testimony of the assessor, who made the assessment and should know most about it; he said this property and that next door were alike and assessed at $131,000, to which he added $78,000 against the instant property for corner influence. And this is conclusively proven by simple mathematics. If the assessor's $78,000 is added to the $141,960 the result is bound to be $219,960. All agree the assessment was $209,000. But if the assessor's $78,000 is added to the $131,000, which he says was the base, the result is $209,000—the exact amount of the assessment. Since the court reduced the assessment by $27,000, from $209,000 to $182,000, and did not disturb the basic rate, he actually took off $1,038 a front foot for corner influence, leaving the assessment for that purpose, $1,962 a front foot." I do not think the learned trial judge made any mistake "in concluding that the agreed basic assessment before corner influence was $5,460 a foot front ($141,960) while in fact it was $5,038 a front foot ($131,000)." That he was correct appears from the "columnar statement" from which I now quote: "As to the properties 1432, 1436 & 1438 inc. which properties do not extend to a rear street, the basic rate of $6,500 is mathematically reduced to $5,460 per front foot which sum is multiplied by the width of the lot, to which is added the proportionate amount of corner influence. Thus all of the properties were uniformly treated as to land value." We should not accept, as the majority opinion accepts, the erroneous statement of the assessor in the face of the documentary evidence showing that the assessment was $142,000. We should review the case, as the learned judge decided it, by accepting the values as given in the statement. As he reduced the assessment to $182,000, it is only $40,000 more than the assessment of premises 1432-34, and if that $40,000 is attributed to the corner influence it would be only $1,538 a front foot,

a figure which I think this court ought not say is not supported by evidence.

The majority sets aside the assessment and directs the court below to make another assessment, and this is done, as I understand the majority to hold, because the weight of the evidence is against the assessment. The only disputable element seems to be the value attributable to corner influence, $40,000, as fixed by the court. I find no justification in the opinion of the majority for the statement that the weight of the evidence is against the learned judge's finding. I assume, when this court uses the term "weight of the evidence" that the court means to apply the same standard as was applied in similar cases in which we said, "In an appeal from an assessment for taxes the findings of fact of the court below have great force. These findings will not be set aside unless clear error is made to appear": *American Academy of Music's Appeal,* 321 Pa. 433, 184 A. 657; *Westbury Apartments, Inc.,* 314 Pa. 130, 170 A. 267. My assumption that the two statements of the rule mean the same thing is based on the proposition that we never intended to apply different rules to the same class of cases.

What does an examination of the record show with respect to weight of evidence? The majority agrees, as I understand it, that the value of appellants' property is enhanced by its nearness to the street intersection, and that some value must be attributed to that influence. That value must be added to the basic front foot value of $5,460, which was the value used by the learned judge as appears in the memorandum signed by him in making the columnar statement a part of the record. When he increased the foot front ground value by $40,-000 to represent the enhancement resulting from location, he kept well within the evidence. I think the weight of the evidence is all with the finding of the learned judge. On the side of the city was (1) the assessment of the Board fixing $209,000 which made out a prima

facie case; (2) the evidence of the experts Harrison and Lyness who attributed $3,000 a front foot, to corner influence. On appellants' side was the evidence of their expert, who testified that the fact that appellants' lot was only four feet from the corner in the center of an important commercial section of the city, added nothing to its value. It is not surprising that the learned judge rejected the conclusion of appellants' expert that proximity to 15th Street added nothing of value. In the exercise of his best judgment he cut the allowance claimed on behalf of the city almost in two. It certainly cannot be said that there is no evidence to support his conclusion. Where, then, and how does clear error appear? By what process of reasoning does the majority reach the conclusion that the weight of evidence is not with the learned judge's finding?

One more consideration may be mentioned. How shall the court below deal with the subject in the retrial which has been ordered? I cannot find that the majority has supplied any standard to guide that court. How shall a figure be ascertained that will meet the approval of this court in the absence of some statement of a rule to be applied? Hitherto, the rule has been that the finding will not be set aside "unless clear error is made to appear." It is well settled that in trials in equity, a chancellor's findings of fact, affirmed by the court in banc, have the effect of a verdict of a jury and will be accepted here: *Purman v. Johnson*, 343 Pa. 645, 22 A. 2d 722. It is also the rule in trials by the court where a jury is waived: *Boocks v. Cochran*, 347 Pa. 36. By applying that rule, I think the assessment made by Judge FLOOD should be affirmed.

Mr. Justice HORACE STERN and Mr. Justice ALLEN M. STEARNE join in this dissent.