# Philadelphia & Reading Coal & Iron Company, Appellant, *v.* Northumberland County Commissioners.

*Taxation—Assessments—Regulation by statute—Public officers—Powers.*

1. The law governing assessments of land for the purpose of taxation is statutory, and neither the assessors, county commissioners, boards of revision, nor the courts on appeal have authority to proceed in any other manner than is prescribed by the statutes.

*Taxation—Assessments—Coal lands—Foot acre rule—Northumberland county lands.*

2. As a general rule the foot acre basis of ascertaining assessable value is exceptional, not of general application, and when applied to coal lands the local conditions must be such as to give the whole coal area a present market value which can be ascertained upon some definite fixed basis. The rule is not applicable to the conditions which exist in

the coal formations of Northumberland county, and in the absence of an agreement of the parties the court cannot consider it in assessing values.

*Taxation—Assessments—Appeals—Burden of Proof—Actual value— Sales.*

3. Assessors and all other taxing authorities are required to assess, rate and value every subject of taxation for local purposes according to the actual value thereof, and at such rates and prices as the same would bring at a bona fide sale after due notice. If the evidence shows recent bona fide sales of tracts under consideration, or of tracts similarly situated in the neighborhood, and of like quality, the general selling price thus established would be the market value, that is if all the conditions are the same. If, however, there be no such sales, and no general asking or selling price in the neighborhood is shown, an assessor must of necessity use his best judgment in determining what he believes the land would sell for at a bona fide sale after due notice. The assessor may avail himself of the knowledge and experience of persons qualified to form an intelligent judgment on the subject, and may take into consideration all matters affecting probable selling price, such as location, condition, improvements, quality of land or coal, and any other element of value that would influence the mind of a purchaser.

4. Where an appeal is taken to the court of common pleas from a tax assessment, the proceedings in court are de novo and a prima facie case is made out by the public authorities when the valuation of each tract, and the data affecting the same on record in the office of the board of revision, are offered in evidence. The burden is then on the appellant to show by the weight of the evidence that the valuation was unjust, inequitable, not uniform in comparison with the valuation of other real estate in the district, and not made upon a proper legal basis. If the appellant fails to show this the assessment will stand.

5. In ascertaining the value of coal lands for tax purposes quantity may be considered, but only in connection with the conditions and circumstances surrounding each particular case. The owner has no reason to complain if the court arrives at an assessment from an independent consideration of all the conditions without particular reference to quantity.

6. Where on an appeal from an assessment of coal lands it appears that the parties agreed that a commission should be appointed for the purpose of ascertaining the facts for the information and guidance of the court, the court is not bound to accept the report of the commission as conclusive. The court itself must fix the valuation having due regard to the valuation and assessment of other real estate in the district.

7. Coal land must be assessed at its market value ascertained, not at any future period, but at the time of the assessment. The question is not what earning or productive power coal lands may develop in the future, but what they are actually worth on the market at present.

8. Unseated coal lands should be assessed in the district where located, and if a tract be divided by a township line, each part thereof should be valued and assessed upon the acreage in the respective townships.

9. In ascertaining the present market value of a tract of virgin coal land the taxing authorities may in general take into consideration facilities for transportation; how far the tract is located from a railroad; what the cost of putting it in operation will be; what is the quality, as well as the quantity of the coal; what are the mining conditions·in the region; how many years will be required to mine, remove and market the coal; how many years will the money invested be on interest; and all other matters which in the mind of a contemplating purchaser would add to or detract from the value of the property; but after all this is said, much must be left to the honest judgment and intelligent discretion of the taxing authorities.

Argued Oct. 7, 1910. Appeals, Nos. 22, 23, 24, 25, 32, 33, 34 and 35, Jan. T., 1910, by plaintiff, from decree of C. P. Northumberland Co., Dec. T., 1907, Nos. 317, 320, 321, 327, 319, 324, 326 and 327, assessing coal lands in case of Philadelphia & Reading Coal & Iron Company v. Northumberland County Commissioners. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from tax assessment. Before SAVIDGE, P. J., and AUTEN, J.

The facts appear by the report of Mineral Railroad & Mining Co. v. Northumberland County Commissioners, supra, and the opinion of the Supreme Court, infra.

*Error assigned* amongst others was the decree of the court.

*S. P. Wolverton,* with him *S. P. Wolverton, Jr.,* for appellants.—The law governing assessments of. land for the purpose of taxation is statutory, and neither the assessors,

the commissioners on appeal or the court on appeal from the commissioners' decision have any authority to proceed in any other manner than that pointed out by the acts.

All the definitions of market value contemplate a sale: Searle v. R. R. Co., 33 Pa. 57; Reading & Pottsville R. R. Co. v. Balthaser, 119 Pa. 472; Becker v. R. R. Co., 177 Pa. 252; Baker v. R. R. Co., 219 Pa. 398.

The acts of assembly under which the assessments were made do not authorize the township assessors or the court on appeal, to ascertain the market value of the different tracts by means of calculating the quantity of minerals in the lands, the profits made in mining the minerals or going into any uncertain or contingent calculations, but only requires them to assess and value the real estate at such rates, and prices for which they would separately bona fide sell: Curtin v. R. R. Co., 135 Pa. 20; Com. v. Pocahontas Coal & Coke Co., 60 S. E. Repr. 84; Lehigh & Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272; Berwind-White Coal Mining Co. v. Clearfield County, 18 Pa. C. C. Rep. 545.

The assessment should be of each tract and its market value ascertained, not at any future period, but at the time of the assessment: Baker v. Pittsburg, etc., R. R. Co., 219 Pa. 398; Curtin v. R. R. Co., 135 Pa. 20.

*J. W. Gillespie*, for appellee.—The conclusion reached by the court was proper: Greenough v. Fulton Coal Co., 74 Pa. 486; Ins. Co. v. Yard, 17 Pa. 331; Hosack v. Crill, 18 Pa. Superior Ct. 90; Murray's Est., 216 Pa. 270; Dorr v. Reynolds, 26 Pa. Superior Ct. 139; Pringle's App., 6 Kulp, 525; Del., Lack. & Western R. R. Co.'s Tax Assessment, 224 Pa. 240; Bell's App., 11 Pa. Dist. Rep. 732; Hamilton's App., 14 Pa. Dist. Rep. 655; Irwin Basin Coal Land's Assessment, 17 Pa. Dist. Rep. 825; Sanderson v. City of Scranton, 105 Pa. 469; Del., Lack. & Western R. R. Co. v. Sanderson et al., 109 Pa. 583; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Plummer v. Hill-

side Coal & Iron Co., 160 Pa. 483; Lehigh, etc., Coal Co. v. Wright, 177 Pa. 387.

OPINION BY MR. JUSTICE ELKIN, January 3, 1911:

We agree with almost every proposition of law advanced by learned counsel for appellant in support of the contention that the valuations of the several tracts of coal lands involved in this proceeding were not made upon an equitable basis nor in conformity with constitutional requirements. But because we agree with the statement of the rules of law relied upon it must not be understood that we are convinced of error in the conclusions reached by the learned court below. The positions of appellant set forth in the argument will be considered and discussed in the following order, to wit:

First, that the law governing assessments of land for the purpose of taxation is statutory, and neither the assessors, county commissioners, boards of revision, nor the courts on appeal have authority to proceed in any other manner than is prescribed by the statutes. To state this proposition is to answer it. Taxation is an incident of sovereignty but the power to levy and assess taxes and the methods of making valuations and assessments depend upon legislative authority. There is no implied power to impose taxes. While the individual owner is vested with the absolute title to his property, he holds it subject to the sovereign power of the state, or of its municipal divisions when so empowered, to impose taxes for the purpose of meeting the public burdens. The demand for taxes on the individual owner must be based upon express legislative authority prescribing the method of determining his share of the burden, otherwise there would be no definite basis of fixing the proportion of that burden which his property should bear. We agree, therefore, that all authorities having to do with the valuation and assessment of lands and the levy and collection of taxes must look to the statutes dealing with the subject for their authority to act.

Second, that the foot acre rule for ascertaining the valuation of the coal lands of appellant for the purpose of taxation is not a proper measure of their value and under existing local conditions should not be used as a basis of valuation. With this position we also agree. This court held in a recent case from Luzerne county that, "It may be stated as a general rule that the foot acre basis of ascertaining assessable value is exceptional, not of general application, and when applied to coal lands, the local conditions must be such as to give the whole coal area a present market value which can be ascertained upon some definite fixed basis:" Lehigh, etc., Coal Co.'s Assessment, 225 Pa. 272. The foot acre rule would reduce all valuations to a quantity basis which in the very nature of coal deposits would be in many instances no real measure of actual value. We entirely agree with the learned counsel for appellant that in the valuation of coal lands in the region where the properties in question are located due consideration must be given to actual conditions existing in the coal formations. Among the things to be considered are thickness of vein, stratification, depth, quality, quantity, pitch of vein, nature of top, character of separating rock formation, kind of overlying surface, location of the tract as to the strike of the vein, difficulty of mining, whether of a gaseous or nongaseous nature, and other matters of like character which by business experience are considered elements in determining the value of coal properties. As shown by the testimony the conditions in the coal formations of Northumberland county are very different from those existing in other parts of the anthracite coal fields of Pennsylvania and these conditions make mining more expensive and limit the amount of coal that can be mined from each acre. Of course these things affect the value of the lands and should be taken into consideration in making assessments for taxation purposes. But there is nothing in this record to show that the court below failed to consider these local conditions in ascertaining the assessed value of the different

properties or that the foot acre rule was adopted as a basis of valuation. Indeed, the tax commission expressly stated that the foot acre cannot under our decisions be used as the unit of value except by agreement and as the parties did not so agree this method was not adopted. The opinion of the court is conclusive that no such method was in mind when the values were determined. This is a complete answer to the contention as to the foot acre basis. It was not used except incidentally as a means of making comparison of the quantity of coal in lands similarly situated.

Third, that assessors and all other taxing authorities are required to assess, rate and value every subject of taxation for local purposes according to the actual value thereof, and at such rates and prices as the same would bring at a bona fide sale after due notice. This is the law. It is so provided in the acts of 1841 and 1842 under the authority of which the valuation and assessment of lands are made. The latter act prescribes the form of oath to be taken by assessors and requires each separate tract with the improvements thereon to be valued at the price which in the honest judgment of the assessor it would sell for if sold singly and separately at a bona fide sale after due notice. These statutes have thus declared the rule for the valuation of real estate and the courts as well as all other authorities having to do with the enforcement of the law are bound and limited by it. As has been well said by some of our lower courts the only measure of valuation recognized by law is market value as distinguished from actual value; or, differently expressed, actual value limited and defined by market value. It is true, as is contended for appellant that the general rule in Pennsylvania is that market value means the price or value of an article established or shown by sales, public or private, in the way of ordinary business. As applied to the valuation of real estate in a proceeding like the one at bar, if the evidence shows recent bona fide sales of the tracts under consideration, or of tracts similarly situated in the

neighborhood and of like quality, the general selling price thus established would be the market value within the meaning of the law, that is, if all the conditions are the same. But the market value of each tract necessarily depends very largely upon its particular location, improvements, quality, conditions and the environment peculiar to it. If, however, there have been no recent sales of the lands under consideration, or of other lands of like quality similarly situated, or no general asking or selling price in the neighborhood is shown, an assessor must of necessity use his best judgment in determining what he believes the land would sell for at a bona fide sale after due notice. The authority of an assessor to exercise his judgment based upon a belief of what he considers the bona fide selling price to be, is expressly conferred by the statutes above referred to. In the absence of evidence of actual sales the assessor as well as every other taxing authority should take into consideration all elements tending to appreciate or depreciate market value. This is what was done in the present case. There were no recent sales either of the lands in question or of others similarly situated and hence no evidence of this character could be produced. Appellant did not attempt to prove present market value upon the basis of selling price at a bona fide sale and appellees were unable to do so. Whenever it can be ascertained by sales of lands of like quality similarly situated, or by recent sales of the lands being assessed, the statutory rule contemplates this method of establishing market value. If, however, there were no sales from which the general selling price might be ascertained, the market value may be established by the testimony of persons acquainted with the property, and whose knowledge and experience qualify them to form an intelligent judgment as to its proper valuation. In such cases it is proper to adduce evidence upon all matters affecting probable selling price, such as location, condition, improvements, quality of land or coal, and any other element of value that would influence the mind of

a purchaser: Pittsburg, etc., R. R. Co. v. Patterson, 107 Pa. 461; Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 325. This rule is recognized in many cases as applied to condemnation proceedings and we see no reason why it should not be applied in the valuation of lands for assessment purposes. In the present case the market value was shown by the testimony of mining engineers and under the circumstances it was the best evidence available. Again, it should be remembered, that when the cases came into the court of common pleas on appeal the proceedings were de novo and a prima facie case was made out by the appellees when the valuation of each tract and the data affecting the same on record in the office of the board of revision, were offered in evidence. The burden was then on appellant to show by the weight of the evidence that the valuation was unjust, inequitable, not uniform in comparison with the valuation of other real estate in the district, and not made upon a proper legal basis. The court found against appellant on the contentions as to inequality and failure to value uniformly and no evidence was offered to establish present market value upon the basis of selling price. Under these circumstances we cannot say the court acted in a manner not warranted by the evidence and the record as it stood, nor that the conclusions reached are erroneous.

Fourth, that the statutes under which assessments are made do not authorize the township assessors or the courts on appeal, to ascertain the market value of the several tracts of coal land by calculating the quantity contained in the different veins, the profits earned in mining, or in considering any uncertain and contingent conditions incident to mining operations, but does require them to assess and value such lands as real estate at such rates and prices as they in the exercise of an honest judgment believe the tracts would sell for if sold separately at a bona fide sale. This in the main is a correct statement of the law. It, however, does not mean that quantity may not be considered as an element of value,

because in many instances it is a very important consideration in determining selling price in the minds of both owner and purchaser. It is true in many cases quantity would be an unjust, unfair and inequitable measure of value. Much depends upon the conditions and circumstances surrounding each particular case. Location, accessibility to markets, transportation facilities, cost of opening and operating, and quality with reference to commercial uses, are frequently more important in determining market value than mere quantity. In the present case the record does not show that quantity, estimated profits, contingent and speculative possibilities, were used as the basis of ascertaining the assessed value and therefore the learned court below cannot be convicted of error upon these grounds. The tax commission may have heard some testimony along these lines and perhaps adverted to some matters of this character in their report to the court but the valuations recommended were based upon what they believed was a fair market value of the lands under consideration after a personal investigation of the several tracts supplemented by the opinions of mining engineers with knowledge and experience. The court did not in every instance adopt the valuation of the tax commission but exercised its best judgment based upon the whole record presented for its consideration. It was its duty so to do. The power to hear and determine was lodged in the court and not in the tax commission which only acted as an aid to the court. Appellant complains that the court did not regard and accept the report of the tax commission as conclusive. It is stated that this was the understanding of the parties and they should be bound by it. The difficulty with this position is that the record does not sustain it. The record shows that the commission was appointed by consent of all parties for the purpose of ascertaining the facts for the information and guidance of the court. The court acted upon this assumption and we think properly so. The act of 1889 imposes the duty upon the court and

does not authorize the appointment of a commission to determine valuations on appeal. Such a commission would be without authority to act except under the direction of the court to ascertain and report facts and conclusions. In the final analysis the court alone, having due regard to the valuation and assessment of other real estate in the district, had the power on appeal to fix the valuation of the several tracts of land involved.

Fifth, that each tract should be assessed at its market value ascertained, not at any future period, but at the time of the assessment. There is no room for doubt as to this being the law. It is argued that in some of the hypothetical questions put to engineers called as witnesses the effort was made to ascertain the value of tracts of virgin coal not being developed by first estimating the quantity of coal in all the veins underlying said tracts, then making allowances for the number and thickness of veins, mining conditions that might arise, the cost and difficulty of operating, the water to be encountered and other like considerations, the present value would be represented by the quantity of coal remaining and available for market after making due allowance for all of these things. We fully agree that this method of determining assessable value of coal lands is too technical and is subject to too many contingencies to be of practical application in the administration of tax laws. If we were convinced that the conclusions of the court below were based upon such considerations it would be our duty to reverse the decree in this case. We are not so convinced, but on the other hand, are of opinion that the court did not base its conclusions upon contingencies and calculations of this character. In a recent case this court, in passing upon a somewhat similar question, said: "Its market value is its fair selling value for cash, not payable as royalty, strung out through a long series of years, but payable at the time it was taken by the defendant, or as soon thereafter as the value could be determined:" Baker v. Pittsburg, etc., Ry. Co., 219 Pa. 398. Such a

method does not make allowance in undeveloped territory for the length of time the coal may lie in the ground unmined, undeveloped and unproductive. It is impossible to reduce to a scientific basis and to mathematical precision the elements of value entering into the present selling price of a tract of coal land. Common sense and practical every day business experience are the best guides for those intrusted with the administration of tax laws. Taxation is a practical and not a scientific problem. The question is not what earning or productive power coal lands may develop in the future but what they are actually worth on the market at present. This is the lawful method of valuation for taxation purposes. Departure from this statutory and practical method has given rise to confusion and is not to be commended. In the present case appellant did not offer any testimony to prove the present market value of its coal lands and upon the whole record we are of opinion that the court below did not unjustly or inequitably value these properties either as to their present market value or in comparison with the valuation of other real estate in the district.

Sixth, that unseated coal lands should be assessed in the district where located, and if a tract be divided by a township line, each part thereof should be valued and assessed upon the acreage in the respective townships. This rule is too well settled to need discussion. It is difficult for us to determine from the record whether this rule has been violated. If it has the correction can be easily made when the record is remitted. What we now decide is that the valuations made by the court below are sustained. If any of these lands have been doubly assessed in both townships, or if any tract divided by a township line has been assessed upon the entire acreage in one township, the court below is authorized and directed to make the correction when the facts are ascertained.

Seventh, that in ascertaining the present market value of a tract of virgin coal land there should be taken into

consideration facilities for transportation; how far the tract is located from a railroad; what the cost of putting it in operation will be; what is the quality as well as the quantity of the coal; what are the mining conditions in the region; how many years will be required to mine, remove and market the coal; how many years will the money invested be on interest, and all other matters which in the mind of a contemplating purchaser would add to or detract from the value of the property. It may be conceded that all of these things do affect the value of an undeveloped coal property and in a general way should be taken into consideration by any one attempting to fix a value upon it. A property that may not be developed for fifty years and when operated may require 100 years to exhaust does not have the same present market value as one fully developed and productive. Of course these conditions influence market value and they should be taken into consideration by assessors and others having to deal with this subject. It is difficult to lay down any hard and fast rule defining in what manner and to what extent the value of a particular tract should be affected by such considerations. After all, much must be left to the honest judgment and intelligent discretion of the taxing authorities. At most the courts can only lay down general rules for their guidance.

It will thus be seen that we agree with the learned counsel for appellant as to the law governing valuations and assessments, but it does not necessarily follow that error was committed by the court below in fixing the valuations in question. The weakness of appellant's case is that while contending with marked ability for the rule making actual market value the standard of assessed value, it introduced no evidence to show present market value or to establish general asking or selling price of coal lands in the neighborhood. No attempt was made to inform the court as to appellant's estimate of present· market value. Appellant was the best judge of the value of its own lands but failed to give the court the benefit

of its knowledge. Without such information the court did the best that could be done under the circumstances. It had before it the assessor's return, the valuation fixed by the board of revision, the report of the tax commission, the benefit of the personal investigation made by the commissioners, the testimony of many witnesses dealing with every phase of the subject and the conditions upon the ground, and had knowledge of the valuation of other real estate in the district of like character similarly situated. With all of these facts before it the court found the valuation fixed by the decree. We cannot say there was error in so doing. By agreement all of these appeals were presented and argued together. Therefore the decree entered in this case will be regarded as applicable to each separate appeal and may be so entered and recorded.

Decree affirmed subject to such modification as the court below is directed to make in the event it shall be ascertained that tracts divided by township lines were improperly assessed. Costs of this appeal to be paid by appellant and in the court below as there directed.